CASE NOS. 20-55445, 20-56324

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

───────────────

WENDY GISH, et al.

*Plaintiffs and Appellants,*

v.

GAVIN NEWSOM, in his official capacity as the Governor of
California, et al.

*Defendants and Appellees.*

───────────────

Appeal From The United States District Court,
Central District of California, Case No. 5:20-cv-00755-JGB-KK

───────────────

## COUNTY OF SAN BERNARDINO DEFENDANTS-APPELLEES' SUPPLEMENTAL EXCERPTS OF RECORD

Deborah J. Fox (SBN: 110929)
dfox@meyersnave.com
Margaret W. Rosequist (SBN: 203790)
mrosequist@meyersnave.com
Matthew B. Nazareth (SBN: 278405)
mnazareth@meyersnave.com
MEYERS, NAVE, RIBACK,
SILVER & WILSON
707 Wilshire Blvd., 24th Floor
Los Angeles, California 90017
Telephone: (213) 626-2906

Michelle D. Blakemore
County Counsel (SBN: 110474)
Penny Alexander-Kelley
Chief Assistant County Counsel
(SBN: 145129)
Office of County Counsel
County of San Bernardino
385 North Arrowhead Avenue
San Bernardino, California 92415
Telephone: (909) 387-5455

Attorneys for Defendants-Appellees
DR. ERIN GUSTAFSON, SHERIFF JOHN MCMAHON,
SUPERVISOR COL. PAUL COOK, SUPERVISOR
JANICE RUTHERFORD, SUPERVISOR DAWN ROWE,
SUPERVISOR CURT HAGMAN, AND SUPERVISOR
JOE BACA, JR.

## SUPPLEMENTAL EXCERPTS OF RECORD

Defendants-Appellees Dr. Erin Gustafson, Sheriff John McMahon, Supervisor Col. Paul Cook, Supervisor Janice Rutherford, Supervisor Dawn Rowe, Supervisor Curt Hagman, and Supervisor Joe Baca, Jr.'s Supplemental Excerpts of Record

*United States District Court,*
*Central District of California, Case No. 5:20-cv-00755-JGB-KK*
U.S. Court of Appeals for the Ninth Circuit, Nos. 20-55445, 20-56324

COSB-SER-1– COSB-SER-71

## INDEX

| Document | File Date | Docket Number | SER Page |
|---|---|---|---|
| Declaration of Matthew B. Nazareth In Support of Joinder by San Bernardino County Defendants in State Defendants' Unopposed Ex Parte Motion for Dismissal with Prejudice and Entry of Judgment | Oct. 21, 2020 | 91-1 | COSB-SER-4 |
| Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion for Reconsideration | Sept. 20, 2020 | 84 | COSB-SER-11 |
| San Bernardino County Defendants' Opposition to Plaintiffs' Motion for Reconsideration of Court's July 8, 2020 Order Granting Motions to Dismiss | Sept. 14, 2020 | 82 | COSB-SER-22 |
| Memorandum of Points and Authorities In Support of Plaintiffs' Motion for Reconsideration | Aug. 17, 2020 | 79-1 | COSB-SER-37 |

| Document | File Date | Docket Number | SER Page |
|---|---|---|---|
| San Bernardino County Defendants' Notice of Motion and Motion to Dismiss; Memorandum of Points and Authorities | May 27, 2020 | 68 | COSB-SER-45 |

1  Deborah J. Fox (SBN: 110929)
   dfox@meyersnave.com
2  Margaret W. Rosequist (SBN: 203790)
   mrosequist@meyersnave.com
3  Matthew B. Nazareth (SBN: 278405)
   mnazareth@meyersnave.com
4  MEYERS, NAVE, RIBACK, SILVER & WILSON
   707 Wilshire Blvd., 24th Floor
5  Los Angeles, California 90017
   Telephone: (213) 626-2906
6  Facsimile: (213) 626-0215

7  Michelle D. Blakemore, County Counsel (SBN: 110474)
   Penny Alexander-Kelley, Chief Assistant
8  County Counsel (SBN: 145129)
   Office of County Counsel
9  County of San Bernardino
   385 North Arrowhead Avenue
10 San Bernardino, California  92415
   Telephone:  (909) 387-5455
11 Facsimile:  (909) 387-5462

12 Attorneys for Defendants

13 DR. ERIN GUSTAFSON, SHERIFF JOHN MCMAHON,
   SUPERVISOR ROBERT A. LOVINGOOD, SUPERVISOR
14 JANICE RUTHERFORD, SUPERVISOR DAWN ROWE,
   SUPERVISOR CURT HAGMAN, AND SUPERVISOR
15 JOSIE GONZALES

16            **UNITED STATES DISTRICT COURT**

17     **CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION**

18 WENDY    GISH,    an    individual;       Case No. 5:20-cv-00755-JGB-KKK
   PATRICK   SCALES,   an   individual;
19 JAMES    DEAN    MOFFATT.    an           **DECLARATION OF MATTHEW B.**
   individual; and BRENDA WOOD, an           **NAZARETH IN SUPPORT OF**
20 individual,                               **JOINDER BY SAN BERNARDINO**
                                             **COUNTY DEFENDANTS IN STATE**
21            Plaintiffs,                    **DEFENDANTS' UNOPPOSED EX**
                                             **PARTE MOTION FOR DISMISSAL**
22     v.                                    **WITH PREJUDICE AND ENTRY**
                                             **OF JUDGMENT**
23 GAVIN   NEWSOM,   in   his   official
   capacity as to Governor of California;
24 XAVIER  BECERRA,  in  his  official
   capacity  as  the  Attorney  General  of    Hon. Jesus G. Bernal
25 California; ERIN GUSTAFSON, in her
   official capacity as the San Bernardino      Trial Date:    None Set
26 County Acting Public Health Officer;
   JOHN MCMAHON, in his official
27
   [CONTINUED ON NEXT PAGE]
28

                                             Case No. 5:20-cv-00755-JGB-KKK

1  capacity as the San Bernardino County
   Sheriff; ROBERT A. LOVINGGOOD,
2  in his official capacity as a San
   Bernardino County Supervisor;
3  JANICE RUTHERFORD, in her official
   capacity as a San Bernardino County
4  Supervisor; DAWN ROWE, in her
   official capacity as a San Bernardino
5  County Supervisor; CURT HAGMAN
   in his official capacity as a San
6  Bernardino County Supervisor; JOSIE
   GONZALES, in his official capacity as
7  a San Bernardino County Supervisor;
   CAMERON KAISER, in his official
8  capacity as the Riverside County Public
   Health Officer; GEORGE JOHNSON in
9  his official capacity as the Riverside
   County Executive Officer and Director
10 of Emergency Services; CHAD
   BIANCO, in his official capacity as the
11 Riverside County Sheriff; KEVIN
   JEFFRIES, in his official capacity as a
12 Riverside County Supervisor; KAREN
   SPIEGEL, in her official capacity as a
13 Riverside County Supervisor; CHUCK
   WASHINGTON, in his official capacity
14 as a Riverside County Supervisor; V.
   MANUAL PEREZ, in his official
15 capacity as a Riverside County
   Supervisor; and JEFF HEWITT, in his
16 official capacity as a Riverside County
   Supervisor,

17
        Defendants.
18

19

20

21

22

23

24

25

26

27

28

NAZARETH DECLARATION ISO COSB DEFENDANTS' JOINDER IN STATE DEFENDANTS' EX PARTE
MOTION FOR DISMISSAL WITH PREJUDICE AND ENTRY OF JUDGMENT

I, Matthew B. Nazareth, declare:

1.     I am a senior associate with the law firm Meyers, Nave, Riback, Silver & Wilson, attorneys of record for Defendants Dr. Erin Gustafson, Sheriff John McMahon, Supervisor Robert A. Lovingood, Supervisor Janice Rutherford, Supervisor Dawn Rowe, Supervisor Curt Hagman, and Supervisor Josie Gonzales ("COSB Defendants") in the above-referenced litigation.  I have personal knowledge of the matters testified to below.

2.     On October 20, 2020, I received an email from Mark P. Meuser of Dhillon Law Group, Inc., counsel for Plaintiffs, regarding this ex parte motion.  Mr. Meuser indicated that Plaintiffs agreed that the denial of the motion for reconsideration resulted in a final determination and judgment should be entered. Attached hereto as Exhibit 1 is a true and correct copy of the October 20, 2020 email.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 21st day of October, 2020 at Los Angeles, California.

/s/ Matthew B. Nazareth
Matthew B. Nazareth

3611721.1

Case No. 5:20-cv-00755-JGB-KKK
NAZARETH DECLARATION ISO COSB DEFENDANTS' JOINDER IN STATE DEFENDANTS' EX PARTE
MOTION FOR DISMISSAL WITH PREJUDICE AND ENTRY OF JUDGMENT

# EXHIBIT "1"

**Nazareth, Matthew**

| | |
|---|---|
| **From:** | Mark Meuser (Dhillon Law) <mmeuser@dhillonlaw.com> |
| **Sent:** | Tuesday, October 20, 2020 5:14 PM |
| **To:** | Todd Grabarsky; Fox, Deborah |
| **Cc:** | Kelly Moran; Jeb Brown; Harmeet K. Dhillon (DhillonLaw); Rosequist, Meg; Nazareth, Matthew; Penny Alexander-Kelley; Ronak Patel |
| **Subject:** | RE: Gish v. Newsom | Ex Parte Motion |

[EXTERNAL E-MAIL]
Todd,

As I stated in the conversation, while we disagree with the Court's ruling on the motion to reconsider the motion to dismiss, the Court's ruling has resulted in a final determination of the issues and thus a Judgment would need to be entered. While I do not see the urgency as is required by local rules before you approach the court with an ex parte application, I am not going to oppose your ex parte application. Our non-opposition to your ex parte application to obtain a judgment in this case shall not be construed as a waiver of our rights to appeal the court's order on the motion to dismiss or the motion to reconsider. As soon as the Court orders a judgment in this case, Plaintiffs intend to appeal the judgment.

Mark P. Meuser
Dhillon Law Group, Inc.
177 Post St., Suite 700
San Francisco, CA 94108
415.433.1700 (o)
415.577.2850 (m)

---

**From:** Todd Grabarsky [mailto:Todd.Grabarsky@doj.ca.gov]
**Sent:** Tuesday, October 20, 2020 1:41 PM
**To:** Fox, Deborah <dfox@meyersnave.com>
**Cc:** Kelly Moran <kmoran@rivco.org>; Jeb Brown <jebbrown@rivco.org>; Harmeet K. Dhillon (DhillonLaw) <harmeet@dhillonlaw.com>; Mark Meuser (Dhillon Law) <mmeuser@dhillonlaw.com>; Rosequist, Meg <mrosequist@meyersnave.com>; Nazareth, Matthew <mnazareth@meyersnave.com>; Penny Alexander-Kelley <palexander-kelley@cc.sbcounty.gov>; Ronak Patel <RPatel@RIVCO.ORG>
**Subject:** Gish v. Newsom | Ex Parte Motion

Mr. Meuser,

It was nice speaking with you on the phone earlier this afternoon.  To memorialize the contents of our conversation: I informed you of the State Defendants' intention to file an *ex parte* motion for dismissal with prejudice and entry of judgment. You stated that Plaintiffs do not wish to seek to amend the complaint nor would they oppose our intended *ex parte* motion.

If you believe that is not an accurate reflection of our conversation, please let me know.

We will be filing the *ex parte* motion later today or tomorrow morning.

Sincerely,

**Todd Grabarsky**
Deputy Attorney General
California Department of Justice
Office of the Attorney General
300 S. Spring St., Ste. 1700
Los Angeles, CA 90013
(213) 269-6044

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of October, 2020, I electronically filed the foregoing **DECLARATION OF MATTHEW B. NAZARETH IN SUPPORT OF JOINDER BY SAN BERNARDINO COUNTY DEFENDANTS IN STATE DEFENDANTS' UNOPPOSED EX PARTE MOTION FOR DISMISSAL WITH PREJUDICE AND ENTRY OF JUDGMENT** with the Clerk of the Court using the CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


/s/ Gale L. Matteson
Gale L. Matteson

1                    Case No. 5:20-cv-00755-JGB-KKK
NAZARETH DECLARATION ISO COSB DEFENDANTS' JOINDER IN STATE DEFENDANTS' EX PARTE
MOTION FOR DISMISSAL WITH PREJUDICE AND ENTRY OF JUDGMENT

1  HARMEET K. DHILLON (SBN: 207873)
   harmeet@dhillonlaw.com
2  MARK P. MEUSER (SBN: 231335)
   mmeuser@dhillonlaw.com
3
   DHILLON LAW GROUP INC.
4  177 Post Street, Suite 700
5  San Francisco, California 94108
   Telephone: (415) 433-1700
6  Facsimile: (415) 520-6593
7
8  Attorneys for Plaintiffs
9
10            UNITED STATES DISTRICT COURT
11            CENTRAL DISTRICT OF CALIFORNIA
12                    EASTERN DIVISION
13
   **WENDY GISH**, an individual, *et al.,*      Case Number: 5:20-cv-00755-JGB-KK
14
                Plaintiffs,                      **PLAINTIFFS' REPLY TO**
15                                               **DEFENDANTS' OPPOSITION TO**
                v.                               **PLAINTIFFS' MOTION FOR**
16                                               **RECONSIDERATION**
   **GAVIN NEWSOM**, in his official
17 capacity as Governor of California, *et al.,*
                                                 Judge:      Honorable Jesus G. Bernal
18              Defendants.                       Date:       October 5, 2020
19                                               Time:       9:00 a.m.
                                                 Courtroom: 1
20
21
22
23
24
25
26
27
28



Plaintiffs' Reply to Motion for Reconsideration      Case No. 5:20-cv-00755-JGB-KK

# INTRODUCTION

On March 19, 2020, defendant Newsom issued Executive Order N. 33-20 requiring the people of California to obey the guidance published by the Department of Public Health. On July 8, 2020 This Court ruled that "the law Plaintiffs seek to enjoin no longer restricts Plaintiffs from holding in-person religious services." Five days after this Court found that Plaintiffs' claims challenging those laws were moot, the California Department of Public Health issued new guidance that reinstituted its ban on Plaintiffs' in-person religious gatherings. In light of this new development, Plaintiffs timely filed a Motion for Reconsideration. Plaintiffs' claims are not moot.

# PRODCEDURAL HISOTRY

On July 8, 2020, this Court Granted Defendant's Motion to Dismiss the case. (ECF 76). Five days later, on July 13, the state then issued new guidance that resulted in churches being closed across the state of California. (ECF 79-4). On July 31st, as they were preparing their Amended Complaint, Plaintiffs' counsel decided that rather than amend the complaint, it was more appropriate to file a Motion to Reconsideration. However, because Local Rule 7-3 requires parties to have a conference seven days prior to filing such a motion, Plaintiffs instead filed a "Notice of Intent to File Motion for Reconsideration" to notify the court of the pending motion. (ECF 78).

On August 6, 2020, the parties met and conferred concerning the pending motion. On August 17, 2020, Plaintiffs filed their Motion for Reconsideration. (ECF 79). The filing of the Notice of Intent to File Motion (ECF 78) on Thursday, August 13, 2020 and Motion for Reconsideration on Monday, August 17, 2020 did not change the date of the hearing on this matter, as the date of the hearing would have been September 21, 2020 regardless of which date the motion was filed. The only reason why the motion was scheduled for the October 1, 2020 deadline was because defense counsel requested the later date to accommodate their schedules.

//

1

Plaintiffs' Application for TRO and                          Case No. 5:20-cv-00755-JGB-KK
For OSC Re: Preliminary Injunction

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ARGUMENT**

**1. AS PLAINTIFFS FILED THEIR MOTION FOR RECONSIDERATION IN A TIMELY MANNER AND IN THE INTEREST OF JUSTICE, THIS COURT SHOULD GRANT PLAINTIFFS' MOTION.**

Defendants claim that Plaintiffs' motion is "untimely" without providing the court with any case law, statute, or legal theory whatsoever. (ECF 83 p.6). The Defendants also assert that Plaintiffs failed to act "diligently" in that they filed their notice for reconsideration eighteen days after they filed their notice of intent. *Id*.

**a. Plaintiffs' filed Motion for Reconsideration within a "Reasonable Time" Per FRCP 60(c).**

There is no "diligence" standard prescribed in the FRCP or in relevant case law with respect to a motion for reconsideration. The Government appears to have invented a "diligence" standard, as it fails to support its application with any case law, statute, or legal theory.

"[A] motion under FRCP 60(b) must be made within a reasonable time…no more than a year after the entry of the judgment or order or the date of the proceeding." FRCP 60(c). Here, the record is clear that this motion for reconsideration was filed well within the year.

**b. Case law supports the reasonableness in the timing of Plaintiffs' filing.**

There are no express limits on reasonable time, and the facts of each case dictate what is reasonable. *U.S. v. Holtzman*, 762 F.2d 720, 725 (9th Cir. 1985) referencing *Corn v. Guam Coral Co.,* 318 F.2d 622, 632 (9th Cir.1963).

In *Lemoge* v. *United States*, plaintiffs "sought relief about seven months after the case was dismissed," and the Ninth Circuit Court of Appeals held this quantum of time to be "reasonable." *Lemoge v. United States*, 587 F.3d 1188, 1197 (9th Cir. 2009).

2



Plaintiffs' Application for TRO and                    Case No. 5:20-cv-00755-JGB-KK
For OSC Re: Preliminary Injunction

1    In *Newcomb v. Cambridge Home Loans, Inc*., a federal district court in Hawaii

2    held that under the circumstances, plaintiff's motion for reconsideration filed eight

3    months after judgement was "reasonable" and thus timely filed. *Newcomb v.*

4    *Cambridge Home Loans, Inc*. D. Haw. No. CV 09-00567 DAE-KSC, 2011 WL

5    2518706, at *4 (D. Haw. June 23, 2011).

6    In re *Pacific Far East Lines, Inc*., 889 F. 2d 242, 249 (9th Cir. 1989) involved a

7    trustee's motion for reconsideration, filed 18 months after judgment, to be timely. The

8    court found that the government failed to show how they were prejudiced by the

9    delay.

10   In *Bateman v. U.S. Postal Service*, the Ninth Circuit Court of Appeals ruled that

11   plaintiffs' FRCP 60(b) motion, which was filed "a little more than one month after the

12   court denied his request to rescind judgment" presented a mere "minimal" delay and

13   was filed within a reasonable amount of time. *Bateman v. U.S. Postal Service*, 231

14   F.3d 1220, 1225 (9th Cir. 2000). The facts on Bateman are similar to the facts in the

15   present matter. The Plaintiff in Bateman "wrote to the court twelve days after it

16   granted summary judgment." *Id*. Similarly, Plaintiffs here notified the court eighteen

17   days after the Government reinstituted unconstitutional burdens on Plaintiffs' First

18   Amendment rights. In *Bateman*, the Plaintiff filed his motion "a little more than one

19   month" after his request to rescind judgment was denied. Here, as the Government

20   concedes, from the time the Government instituted the July 13 Order, Plaintiffs filed

21   their motion for reconsideration thirty-six days later—a little over a month. Like

22   Bateman, "a little more than one month" is a "minimal" delay and is reasonable under

23   FRCP 60(c).

24   "What constitutes 'reasonable time' depends upon the facts of each case, taking

25   into consideration the interest in finality, the reason for delay, the practical ability of

26   the litigant to learn earlier of the grounds relied upon, and prejudice to the other

27   parties." *Lemoge* at 1197 (quoting *Ashford v. Steuart,* 657 F.2d 1053, 1055 (9th

28   Cir.1981) (per curiam).

3



Plaintiffs' Application for TRO and                    Case No. 5:20-cv-00755-JGB-KK
For OSC Re: Preliminary Injunction

1    Here, the Government never articulates an interest in finality; it never speaks to the

2    practicability of Plaintiffs' ability to learn earlier of the grounds for reconsideration; it

3    never claims that granting the motion for reconsideration would prejudice it in the

4    least. It merely accuses Plaintiffs of failing to provide an "explanation" for taking

5    eighteen days to notify the court of their intent to file a motion for reconsideration and

6    eighteen additional days to file their motion with the court. (ECF 83 p. 6). No such

7    explanation is due, particularly these circumstances where the government changes its

8    policies multiple times and then claims them to be unreviewable.

9    "The policy of the law is to favor a hearing of a litigant's claim on the merits."

10   *Russell v. Cunningham*, 279 F.2d 797, 804 (9th Cir. 1960). Here, justice requires such

11   a hearing on the merits, in light of the Government's new order again substantially

12   burdening Plaintiffs' First Amendment rights. Granting Plaintiffs' Motion for

13   Reconsideration would not prejudice the government, but denying it would prejudice

14   Plaintiffs. Granting Plaintiffs' Motion would not deprive the Government of its

15   interest in finality, as this case is currently on appeal at the Ninth Circuit. And finally,

16   while the Government claims that Plaintiffs failed to act "diligently," its assertion is

17   bereft of authority to support it. Even if Plaintiffs could have filed their Motion earlier,

18   any delay by not filing earlier, like *Bateman*, would only result in a "minimal" delay

19   that also like *Bateman*, should be considered timely.

20       **c. Defendants' Claim that FRCP 59(e) Controls is Meritless.**

21   Riverside County falsely contends that Plaintiffs failed to "identify the Rule" under

22   which the Motion for Reconsideration applies. (ECF 81 p. 3). This is a particularly

23   perplexing claim since Co-Defendant San Bernardino County recognizes "that

24   Plaintiffs appear to be relying on…Rule 60(b)(6)." (ECF 82 p. 5). Riverside County

25   then erroneously claims that because no controlling Rule was cited, FRCP 59(e)

26   should apply prescribing a ten-day deadline for filing a motion for reconsideration.

27

28

Plaintiffs' Application for TRO and                    Case No. 5:20-cv-00755-JGB-KK
For OSC Re: Preliminary Injunction

1  (ECF 81 p. 3).[1] Riverside County's claims are meritless. Plaintiffs' Memorandum in

2  Support of the Motion for Reconsideration clearly cites multiple times, to FRCP 60(b)

3  as its authorizing authority. *See e.g.*, ECF 79-1 p. 5, "Accordingly, the Court should

4  properly grant Plaintiffs' requested relief pursuant to Local Rule 7-18 and Fed. R. Civ.

5  P. 60(b)(6)."

### d.  Plaintiffs Have Appropriately Stated Claims Under L.R. 7-18.

7  Defendant Riverside County's brief relies heavily on *Orange Theory Partners*

8  *v. Arnold*, 179 F. 3d 656, 665 (9th Cir. 1999). (ECF 81). However, *Orange Theory*

9  concerns FRCP 59e, not FRCP 60. Riverside also argues that since the framework of

10  analysis under *Orange Theory* is similar to the framework under L.R. 7-18, that the

11  court should look to *Orange Theory* for guidance. There is no support for this

12  contention. Although L.R. 7-18 is narrower than FRCP 59 and 60, L.R. 7-18

13  framework certainly does not preclude claims from being asserted under FRCP 60.

14  *Ketab Group v. Mesrian Law Group*, 2015 WL 2084469 (C.D. Cal May 25, 2015). [2]

### e.  Change in Law Justifies Motion for Reconsideration.

16  This Court may grant a motion for reconsideration for "any reason" that justifies

17  relief." FRCP 60(b)(6). Here, just five days after the Court dismissed Plaintiffs' case

18  on mootness grounds, the Department of Public Health reinstituted its severe burden

19  on Plaintiffs' exercise of First Amendment rights. Defendants' July 13, 2020 re-

20  injures Plaintiffs—depriving them of their liberty interest—giving rise to this

21  litigation.

---

[1] It is unclear why a "ten day" limit is suggested when Fed. R. Civ. P. 59 (e) contains a 28-day limit.

[2] Local Rule 7–18 further limits the grounds for reconsideration pursuant to Local Rule 7–18, and is thus narrower than the standard articulated in *Carroll* and the standards for reconsideration under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 59(e); Fed.R.Civ.P. 60. *Ketab*, n. 3; also, L.R. 7-18 does not contain a time limit. *Ketab*, n.3 citing *Williams v. UMG Recordings, Inc.,* 281 F.Supp.2d 1177, 1185 n. 13 (C.D.Cal.2003).

5



Plaintiffs' Application for TRO and                Case No. 5:20-cv-00755-JGB-KK
For OSC Re: Preliminary Injunction

1    State Defendants' interpretation on *Carroll v. Nakatani* is incorrect. The State

2    asserts that *Carroll v. Nakatani*, 342 F. 3d 934, 945 (9th Cir. 2003) provides that a

3    motion for reconsideration is to be used sparingly. (ECF 83 p. 5). But State

4    Defendants fail to provide this court with the full extent of the *Carroll* analysis: "a

5    motion for reconsideration should not be granted, absent highly unusual

6    circumstances, unless the district court is presented with newly discovered evidence,

7    committed clear error, or if there is an intervening change in the controlling law." *Id.*

8    at 945, citing *Kona Enters., Inc. v. Estate of Bishop,* 229 F.3d 877, 890 (9th Cir.

9    2000). Here, the July 13, 2020 Order constitutes an intervening change in the

10   controlling law.

11       Additionally, State Defendants assert that Plaintiffs' motion illustrates its

12   "unhappiness with the outcome" and that such feeling would form the sole basis of

13   Plaintiffs' claims. (ECF 83 p. 8), citing *Roe v. LexisNexis Risk Sols. Inc.,* 2013 WL

14   12134002 at *2 (C.D. Cal. May 2, 2013).  While *Roe* appropriately acknowledges that

15   "[u]nhappiness with the outcome is not included within" L.R. 7-18, *Roe* also reiterates

16   that "unless the moving party shows that one of the stated grounds for reconsideration

17   exists, the Court will not grant a reconsideration." *Id.* at 2. Here, Plaintiffs can show

18   that a burden on religious services was reinstated after the judgment entered by the

19   court, which meets the requirement of a change in controlling law, and also the act of

20   reissuing previous bans is new evidence for the court to consider when determining

21   the likelihood of future occurrence – and this court is not merely presented with the

22   likelihood of future occurrence of challenged conduct, rather this court is presented

23   with the fact that the challenged conduct has reoccurred.

24       San Bernardino County questions why Plaintiffs did not amend their complaint

25   prior to July 31, 2020 and instead filed a motion for reconsideration. (ECF 82 p. 1).

26   Riverside County claims that this court "ordered Plaintiffs to file an amended

27   complaint" (ECF 81 p. 2) which is untrue. Simply put, given the actions of

28   Defendants' reissuance of its ban in religious gatherings a mere five days after the

6



| Plaintiffs' Application for TRO and | Case No. 5:20-cv-00755-JGB-KK |
| For OSC Re: Preliminary Injunction | |

1 judgment in this case, the proper vehicle to bring this issue before the court is a
2 motion to reconsider; Defendants' Executive Order N-33-20 has never been lifted and
3 forms the basis for any underlying, subsequent order and directives that also infringe
4 upon constitutional rights of Plaintiffs. (ECF 79-1 p. 3-4).

### 2. PLAINTIFFS MOTION FOR RECONSIDERATION SHOULD BE GRANTED – THIS CASE IS NOT MOOT

Plaintiffs' challenge to Executive Order N-33-20 (State Order) is still live and
justiciable. The State Order has not been rescinded. The State Order forms the basis
for the government's issuance of subsequent orders (such as Executive Order N-60-
20) instructing the public to heed and continue to obey the public health directives.
The State Order is still in effect, and thus Plaintiffs' challenge to the Government's
burdens and restrictions on rights that are constitutionally protected is not moot.

### a. This Case is Not Moot – the Government Has Resumed The Conduct That is Challenged by Plaintiffs

On July 13, 2020, less than a week after this Court dismissed Plaintiffs' claims
based on mootness, restrictions on in-person worship services were "tightened" – as
admitted by Defendants. State Opp. 7. This court expressly granted Defendants'
Motions to Dismiss based on Plaintiffs' claims being moot. (ECF 76 p. 6).
Defendants' position also now adds the element of *degree* on which constitutionally
protected rights can be infringed, which is not the issue present in this motion for
reconsideration. Plaintiffs first assert that their claims are not moot, but even if this
Court finds such claims are moot, exceptions to mootness apply.

### b. The Government Cannot Show a Cessation to Its Challenged Conduct

Defendants ask that this Court presume that a total ban on outdoor worship will
not be reinstated, or total ban on indoor worship, without any factual support for the
truth of that presumption, and when reality has shown that restrictions were recently
tightened. (ECF 81 p. 6-7, ECF 82 p. 3-4, and ECF 83 p. 7).  But whether the

7



Plaintiffs' Application for TRO and                    Case No. 5:20-cv-00755-JGB-KK
For OSC Re: Preliminary Injunction

Government argues its restrictions are a total ban or just a "tightening" is not the issue for this Court to decide in this Motion for Reconsideration.

Ninth Circuit authority provides "when the Government asserts mootness based on such a [policy] change it still must bear the heavy burden of showing that the challenged conduct cannot reasonably be expected to start up again." *Rosebrock v. Mathis*, 745 F.3d 963, 971- 972 (9th Cir. 2014). State Defendants assert that government defendants' policies should be treated differently than polices enacted by private actors, likening the governor's executive orders to laws or legislation. ECF 83 p. 9, citing *Bd. Of Trustees of Glazing Health*, 941 F. 3d 1195, 1199 (9th Cir. 2019). But in *Glazing Health*, the Nevada legislature repealed a statute and replaced it with another one, "without reenacting the challenged provisions." *Id. Glazing Health* also provided framework: "in determining whether a case is moot, we should presume that the repeal, amendment, or expiration of legislation will render an action challenging the legislation moot, *unless there is a reasonable expectation that the legislative body will reenact the challenged provision or one similar to it.* " Id. (emphasis added). Here, the reenactment of the same or similar legislation has exceeded any reasonable expectation of enactment – the reenactment of the March restrictions has actually occurred by the issuance of the July order.

In *Northeastern Florida Contractors v. Jacksonville*, the court refused to dismiss as moot a challenge to a city ordinance, even after a newer one was enacted (the newer statute affected Plaintiffs to a "lesser degree" and the plaintiffs still had a live claim for relief) 508 U.S. 656, 662 (1993). The court reasoned that the new statute posed the same <u>basic constitutional question as the old statute</u> – which is an issue here. And in applying this "well settled" rule that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice," the court in *Northeastern Florida Contractors v. Jacksonville* held that changing language, rather than repealing on the whole, is the same- new ordinances can "differ[] in certain respects from the old one" and "the *selfsame*



Plaintiffs' Application for TRO and                    Case No. 5:20-cv-00755-JGB-KK
For OSC Re: Preliminary Injunction

1    statute" does not have to be enacted to prevent a case from being moot; "if that were
2    the rule, a defendant could moot a case by repealing the challenged statute and
3    replacing it with one that differs only in some insignificant respect." *Id.* (citing to *City*
4    *of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)).

5         In *Cuviello v. City of Vallejo*, 944 F. 3d 816 (9th Cir. 2019), a case involving
6    constitutional violations, a change in city ordinance regarding permits did not render
7    the case moot where recent amendments still adversely affected plaintiffs'
8    constitutional rights ("To determine whether a legislative change has rendered a
9    controversy moot, we ask "whether the new ordinance is sufficiently similar to the
10   [previously challenged] ordinance that it is permissible to say that the challenged
11   conduct continues."). *Id* at 825. Although this lessens the asserted harm caused by the
12   permit requirement, it does not eliminate the harm. *Id*.

13        To be clear, Executive Order N-33-20, and all orders and directives relying on
14   this order, is not the result of the legislative process, even though these orders and
15   directives have the force of law. And unlike statutory changes made through a
16   legislative process, a policy change made through executive action is not necessarily
17   entitled to a presumption that agency will not revert back to the challenged action.
18   *Rosebrock* at 971. This is particularly true where, as here, the policy change is "not
19   reflected in statutory changes or even in changes in ordinances or regulations,"
20   because "the new policy … could be easily abandoned or altered in the future." *Id*.
21   (citing *Bell v. City of Boise*, 709 F.3d 890, 901 (9th Cir. 2013) (a policy change is
22   insufficient to render case moot)).[3] *Givens v. Newsom*, No. 2:20-cv-00852 (E.D. Cal.
23   July 14, 2020) is also instructive: "And there is a lot of language, especially in
24   *Rosebrock*, that talks about the difference between the governor actually repealing or

25

26

27   ────────────
     [3] Like the Chief of Police in *Bell* who maintained sole authority over policies,
28   executive order power is vested with the Governor, who has the authority to establish
     orders that are being challenged by the Plaintiffs. *Id*.

                                                        9



Plaintiffs' Application for TRO and                    Case No. 5:20-cv-00755-JGB-KK
For OSC Re: Preliminary Injunction

1  rescinding an order. And simply, in effect, he's modified this order. But he can

2  reinstate it at any time".

3         Since the Governor is free to "return to his old ways," there "is a public interest

4  in having the legality of the practices settled [which] militates against a mootness

5  conclusion." *United States v. W.T. Grant Co*., 345 U.S. 629, 632-33 (1953).  Whether

6  Governor Newsom's orders (which San Bernardino and Riverside County also follow

7  and enforce) are characterized as legislative enactments or policy change, Defendant

8  has failed to carry that "heavy burden" against mootness here. The July order has

9  proven that the Governor's challenged conduct is still a live controversy.

10                                   **CONCLUSION**

11         Plaintiffs properly and timely filed their Motion for Reconsideration under

12  FRCP 60 and L.R. 7-18. Given the recent actions of Defendants after the order

13  dismissing Plaintiffs' case, this case is not moot. Plaintiffs' challenge to Defendants'

14  actions are still live and justiciable, as supported by jurisprudence and the particular

15  facts of this case. Accordingly, this Court should rule on the merits of this challenge in

16  light of Defendants' changed position.

17                                             Respectfully submitted,

18  Date: September 21, 2020                   DHILLON LAW GROUP INC.

19

20                               By:    /s/ Harmeet K. Dhillon
                                        HARMEET K. DHILLON (SBN: 207873)
21                                      harmeet@dhillonlaw.com
                                        MARK P. MEUSER (SBN: 231335)
22                                      mmeuser@dhillonlaw.com
                                        DHILLON LAW GROUP INC.
23                                      177 Post Street, Suite 700
                                        San Francisco, California 94108
24                                      Telephone: (415) 433-1700

25

26                                      Attorneys for Plaintiffs

27

28

                                          10

Plaintiffs' Application for TRO and              Case No. 5:20-cv-00755-JGB-KK
For OSC Re: Preliminary Injunction

1  Deborah J. Fox (SBN: 110929)
   dfox@meyersnave.com
2  Margaret W. Rosequist (SBN: 203790)
   mrosequist@meyersnave.com
3  Matthew B. Nazareth (SBN: 278405)
   mnazareth@meyersnave.com
4  MEYERS, NAVE, RIBACK, SILVER & WILSON
   707 Wilshire Blvd., 24th Floor
5  Los Angeles, California 90017
   Telephone: (213) 626-2906
6  Facsimile: (213) 626-0215

7  Michelle D. Blakemore, County Counsel (SBN: 110474)
   Penny Alexander-Kelley, Chief Assistant
8  County Counsel (SBN: 145129)
   Office of County Counsel
9  County of San Bernardino
   385 North Arrowhead Avenue
10 San Bernardino, California  92415
   Telephone:  (909) 387-5455
11 Facsimile:  (909) 387-5462

12 Attorneys for Defendants

13 DR. ERIN GUSTAFSON, SHERIFF JOHN MCMAHON,
   SUPERVISOR ROBERT A. LOVINGOOD, SUPERVISOR
14 JANICE RUTHERFORD, SUPERVISOR DAWN ROWE,
   SUPERVISOR CURT HAGMAN, AND SUPERVISOR
15 JOSIE GONZALES

16                  **UNITED STATES DISTRICT COURT**

17         **CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION**

| | |
|---|---|
| 18  WENDY   GISH,   an   individual; | Case No. 5:20-cv-00755-JGB-KKK |
| PATRICK   SCALES,   an   individual; | |
| 19  JAMES   DEAN   MOFFATT.   an | **SAN BERNARDINO COUNTY** |
| individual; and BRENDA WOOD, an | **DEFENDANTS' OPPOSITION TO** |
| 20  individual, | **PLAINTIFFS' MOTION FOR** |
| | **RECONSIDERATION OF** |
| 21            Plaintiffs, | **COURT'S JULY 8, 2020 ORDER** |
| | **GRANTING MOTIONS TO** |
| 22      v. | **DISMISS** |
| 23  GAVIN   NEWSOM,   in   his   official | Hearing Date:  October 5, 2020 |
| capacity as to Governor of California; | Time:          9:00 am |
| 24  XAVIER   BECERRA,   in   his   official | |
| capacity  as  the  Attorney  General  of | Hon. Jesus G. Bernal |
| 25  California; ERIN GUSTAFSON, in her | |
| official  capacity  as  the  San  Bernardino | Trial Date:      None Set |
| 26  County Acting Public Health Officer; | |
| JOHN MCMAHON, in his official | |
| 27 | |
| [CONTINUED ON NEXT PAGE] | |
| 28 | |

                                              Case No. 5:20-cv-00755-JGB-KKK

SAN BERNARDINO COUNTY DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
RECONSIDERATION OF COURT'S JULY 8, 2020 ORDER GRANTING MOTIONS TO DISMISS

COSB-SER-22

1  capacity as the San Bernardino County
   Sheriff; ROBERT A. LOVINGGOOD,
2  in his official capacity as a San
   Bernardino County Supervisor;
3  JANICE RUTHERFORD, in her official
   capacity as a San Bernardino County
4  Supervisor; DAWN ROWE, in her
   official capacity as a San Bernardino
5  County Supervisor; CURT HAGMAN
   in his official capacity as a San
6  Bernardino County Supervisor; JOSIE
   GONZALES, in his official capacity as
7  a San Bernardino County Supervisor;
   CAMERON KAISER, in his official
8  capacity as the Riverside County Public
   Health Officer; GEORGE JOHNSON in
9  his official capacity as the Riverside
   County Executive Officer and Director
10 of Emergency Services; CHAD
   BIANCO, in his official capacity as the
11 Riverside County Sheriff; KEVIN
   JEFFRIES, in his official capacity as a
12 Riverside County Supervisor; KAREN
   SPIEGEL, in her official capacity as a
13 Riverside County Supervisor; CHUCK
   WASHINGTON, in his official capacity
14 as a Riverside County Supervisor; V.
   MANUAL PEREZ, in his official
15 capacity as a Riverside County
   Supervisor; and JEFF HEWITT, in his
16 official capacity as a Riverside County
   Supervisor,
17
                Defendants.
18
19
20
21
22
23
24
25
26
27
28

Case No. 5:20-cv-00755-JGB-KKK
SAN BERNARDINO COUNTY DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
RECONSIDERATION OF COURT'S JULY 8, 2020 ORDER GRANTING MOTIONS TO DISMISS

COSB-SER-23

1

2

## TABLE OF CONTENTS

**Page**

3    I.     INTRODUCTION .............................................................................. 1

4    II.    FACTUAL BACKGROUND ............................................................ 2

5    III.   PLAINTIFFS' MOTION DOES NOT MEET THE LEGAL
            STANDARD FOR RECONSIDERATION ....................................... 4
6
7    IV.    PLAINTIFFS' COMPLAINT AGAINST THE COSB DEFENDANTS
            REMAINS MOOT ............................................................................ 5

8           A.    The Challenged COSB Public Health Orders Were Rescinded And
                  No New COSB Orders Have Been Issued ............................... 6
9
10          B.    The State's Updated July 13, 2020 Directives Are Irrelevant To
                  The Mootness Analysis Regarding The COSB Defendants. .... 8

11   V.     CONCLUSION ................................................................................. 9

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Already, LLC v. Nike, Inc.*,
   568 U.S. 85 (2013) ............................................................. 6

*Bd. of Trs. of Glazing Health & Welfare Trust v. Chambers*,
   941 F.3d 1195 (9th Cir. 2019) ........................................ 6, 7

*Liljeberg v. Health Servs. Acquisition Corp.*,
   486 U.S. 847 (1988) ........................................................... 5

*Maldonado v. Morales*,
   556 F.3d 1037 (9th Cir. 2009) ........................................... 6

*Pitts v. Terrible Herbst, Inc.*,
   653 F.3d 1081 (9th Cir. 2011) ........................................... 6

*Rosebrock v. Mathis*,
   745 F.3d 963 (9th Cir. 2014) ......................................... 6, 7

*Santa Monica Food Not Bombs v. City of Santa Monica*,
   450 F.3d 1022 (9th Cir. 2006) ........................................... 6

*Scottsdale Ins. Co. v. Dickstein Shapiro LLP*,
   389 F. Supp. 3d 794 (C.D. Cal. 2019) ............................... 5

*Seven Words LLC v. Network*
   Solutions, 260 F.3d 1089, 1095 (9th Cir. 2001 ................. 6

*South Bay United Pentecostal v. Newsom*,
   140 S.Ct. 1613 (2020) ........................................................ 9

*Spell v. Edwards*,
   962 F.3d 175 (5th Cir. 2020) ............................................. 7

*United States v. Alpine Land & Reservoir Co.*,
   984 F.2d 1047 (9th Cir. 1993) ........................................... 5

*Weinstein v. Bradford*,
   423 U.S. 147 (1975) ........................................................... 8

ii                    Case No. 5:20-cv-00755-JGB-KKK

**Other Authorities**

Fed. R. Civ. Proc. § 60(b) ........................................................................................4

Local Rule 7-18 ........................................................................................................4

Local Rule 60(b)(6) ..................................................................................................5

Case No. 5:20-cv-00755-JGB-KKK

SAN BERNARDINO COUNTY DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
RECONSIDERATION OF COURT'S JULY 8, 2020 ORDER GRANTING MOTIONS TO DISMISS

COSB-SER-26

## I.    INTRODUCTION

The County of San Bernardino ("COSB") rescinded its challenged Public Health Orders in this matter over four months ago.  See Dkt. 69 (RJN, Ex. J [COSB May 8, 2020 Public Health Order]).  Accordingly, on July 8, 2020, this Court found Plaintiffs' complaint moot and granted the COSB Defendants' motion to dismiss.  See Dkt. 76 (Court's July 8, 2020 Minute Order Granting All Defendants' Motions to Dismiss).  Plaintiffs now misleadingly infer that all of the "Defendants" in this matter have instituted new restrictions on Plaintiffs' religious services, when in fact it is only the State of California ("the State") that issued updated directives on July 13, 2020.  Because the COSB's Public Health Orders remain rescinded, and no new COSB restrictions have been implemented, there is nothing for this Court to reconsider as to the COSB Defendants.  Indeed, illustrating the spurious nature of Plaintiffs' position, they have provided the Court with a scant 1.5 pages of argument in a halfhearted attempt to prop up their motion.  They offer no explanation for their failure to amend their complaint by the Court's July 31, 2020 deadline and offer no basis (amendment or not) for the Court to reconsider its prior ruling granting the COSB's motion to dismiss.  Plaintiffs' motion for reconsideration should be rejected and the COSB Defendants should be dismissed with judgement entered in their favor forthwith.

At the onset, Plaintiffs fail to meet the baseline legal requirements for bringing a motion for reconsideration.  No change in law or fact exists as between the Plaintiffs and the COSB Defendants, nor are there any extraordinary circumstances warranting reconsideration here.  Moreover, Plaintiffs' argument that mootness is defeated because the COSB remains free to issue new orders in the future was already considered and rejected by the Court in its July 8, 2020 ruling.  Once again, the mere possibility that the COSB may issue new restrictions does not meet the Article III case or controversy requirement.  And Plaintiffs' demand that this Court issue some type of declaratory relief about already rescinded orders or speculative future orders would be an impermissible advisory opinion (just as this Court already found in its July 8,

1  2020 ruling).  Likewise, Plaintiffs' suggestion that this Court enjoin the COSB from

2  enforcing the State's directives is nonsensical both as there is no claim about

3  enforcement in the complaint and no reason to believe that the COSB would enforce

4  the State's directives if this Court found them unconstitutional.  Rather, the COSB's

5  own Public Health Orders no longer bind Plaintiffs and there is nothing left for this

6  Court to enjoin in regards to the COSB Defendants.

7      Finally, Plaintiffs' attempt to link the State's issuance of its July 13, 2020

8  directive to the COSB is equally untenable.  There is no evidence that the State's

9  directive has, or will, trigger further actions or orders from the COSB.  Nor is there

10  evidence that the COSB intends to cycle through a process of reinstating and

11  rescinding the same restrictions over and over. Quite the contrary, the COSB's

12  challenged Public Health Orders were rescinded over four months ago and the COSB

13  now directs individuals to the State's orders and directives as the sole guidance.  See

14  Dkt. 69 (RJN, Ex. J [COSB May 8, 2020 Public Health Order]).  Accordingly, for all

15  the reasons discussed herein, Plaintiffs' stale claims against the COSB cannot be

16  revived by their faulty motion for reconsideration.

17  **II.    FACTUAL BACKGROUND**

18      On July 8, 2020 this Court granted all Defendants' motions to dismiss in this

19  matter based on mootness.  See Dkt. 76 (Court's July 8, 2020 Minute Order Granting

20  All Defendants' Motions to Dismiss).  As was the case when the Court issued its

21  mootness ruling, the challenged COSB Public Health Orders remain rescinded and do

22  not bind or otherwise impact Plaintiffs and their worship services.  Moreover, no new

23  restrictions have been enacted by the COSB since the rescindment of the challenged

24  Public Health Orders on May 8, 2020.

25      Nonetheless, Plaintiffs filed a motion for reconsideration on August 17, 2020

26  based on the sole ground that their complaint was not moot because the State issued

27  updated public health directives for religious services on July 13, 2020.  See Dkt. 79

28  (Mtn. for Reconsideration).  Plaintiffs offer no explanation as to why the State's action

SAN BERNARDINO COUNTY DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
RECONSIDERATION OF COURT'S JULY 8, 2020 ORDER GRANTING MOTIONS TO DISMISS

1   should trigger reconsideration of this Court's granting of the COSB's motion to

2   dismiss, as indeed there is none. *See id.* Rather, the COSB has no operative Public

3   Health Orders in effect and there is still nothing for this Court to enjoin or otherwise

4   grant Plaintiffs as to the COSB Defendants.

5        Plaintiffs' complaint filed in mid-April of 2020 challenged the constitutionality

6   of the government's initial stay at home orders issued at the beginning of this ongoing

7   COVID-19 pandemic. Dkt. 1 (Compl.). Specifically, on March 19, 2020, Governor

8   Newsom issued Executive Order N-33-20 which directed all residents to shelter in

9   place except as needed to maintain consistency of operations of defined critical

10  infrastructure sectors in order to combat the spread of the virus that causes COVID-

11  19. The COSB, following the lead of the State, issued a series of Public Health Orders

12  on March 17, and April 17, 2020 mirroring the State's directives. See Dkt. 69 (RJN,

13  Exs. F, H). These State and County Public Health Orders issued in March and April

14  2020 are the only Orders challenged by Plaintiffs in their pleadings. See Dkt. 1

15  (Compl.).

16       Over four months ago, on May 8, 2020, the COSB rescinded the Public Health

17  Orders challenged by Plaintiffs which limited gatherings, including Plaintiffs'

18  religious services. Dkt. 69 (RJN, Ex. J [COSB May 8, 2020 Public Health Order]).

19  No new COSB Public Health Orders have been issued. Plaintiffs' religious services

20  are not prohibited, limited, or restricted by any operative orders or actions of the

21  COSB. *See id*. On May 27, 2020 the COSB filed a motion to dismiss Plaintiffs'

22  complaint, as did the other Defendants in the case, and this Court granted all the

23  motions to dismiss based on mootness with leave to amend. See Dkt. 76 (Court's July

24  8, 2020 Minute Order Granting All Defendants' Motions to Dismiss). This Court

25  explained that:

26   • The Orders that Plaintiffs seeks to enjoin no longer bind Plaintiffs and an

27     injunction is unnecessary;

28   • Plaintiffs' desire for the Court to opine on the validity of a law that no longer

3                                    Case No. 5:20-cv-00755-JGB-KKK

SAN BERNARDINO COUNTY DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
RECONSIDERATION OF COURT'S JULY 8, 2020 ORDER GRANTING MOTIONS TO DISMISS

COSB-SER-29

1    restricts them does not revive their controversy;

2    • Defendants have not merely voluntarily ceased the challenged conduct but

3      have changed the relevant laws; and

4    • Hypothetical future restrictions on in-person religious services will not

5      evade review.  See *id*., at 5-6.

6    The Court's grounds for granting the COSB's motion to dismiss based on

7 mootness are equally germane today as they were on July 8, 2020 .  There are no new

8 changes in the COSB's laws that can form the basis for reconsideration and the COSB

9 Defendants should be dismissed from this case.

10 **III.   PLAINTIFFS' MOTION DOES NOT MEET THE LEGAL STANDARD**

11 **FOR RECONSIDERATION**

12    Pursuant to Local Rule 7-18, a motion for reconsideration of the decision on

13 any motion may *only* be made on one of the three following grounds:  (1) a material

14 difference in fact or law; (2) the emergence of new material facts or a change of law;

15 or (3) a manifest showing of a failure to consider material facts.  Local Rules Central

16 Dist. Cal., L.R. 7-18.  None of these three required grounds for reconsideration are

17 present here in regards to the Court's ruling granting the COSB's motion to dismiss.

18 Specifically, there is no difference in, or change of, law or fact or a failure by this

19 Court to have considered material facts.  Rather, Plaintiffs' only basis for seeking

20 reconsideration is the State's issuance of its July 13, 2020 guidelines and directives.

21 And whether or not this serves as the basis for reconsideration as to the State's motion

22 to dismiss (and it is doubtful that it does), this State action manifestly does not form

23 the basis for reconsideration of the Court's order granting the COSB's motion to

24 dismiss.  There has been no change in law or fact that implicates the COSB

25 Defendants and Plaintiffs complaint remains moot as to them.

26    Likewise, none of the enumerated reasons under the Federal Rules of Civil

27 Procedure for seeking relief from this Court's order granting the COSB's motion to

28 dismiss are present here.  *See* Fed. R. Civ. Proc. § 60(b).  Specifically, the general

4                                    Case No. 5:20-cv-00755-JGB-KKK

SAN BERNARDINO COUNTY DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
RECONSIDERATION OF COURT'S JULY 8, 2020 ORDER GRANTING MOTIONS TO DISMISS

COSB-SER-30

1    "catchall" category that Plaintiffs appear to be relying on under Rule 60(b)(6),

2    whereby the Court can grant relief for "any other reason that justifies relief", is not

3    applicable as the rule is only applied in "extraordinary circumstances" as an equitable

4    remedy to prevent manifest injustice. *Liljeberg v. Health Servs. Acquisition Corp.*,

5    486 U.S. 847, 863-64 (1988); *United States v. Alpine Land & Reservoir Co.*, 984 F.2d

6    1047, 1049 (9th Cir. 1993); *Scottsdale Ins. Co. v. Dickstein Shapiro LLP*, 389 F. Supp.

7    3d 794, 835 (C.D. Cal. 2019).  Plaintiffs have made no showing that this Court's order

8    dismissing the COSB Defendants from this case was erroneous, that Plaintiffs could

9    not protect their interest by filing an amended complaint and/or an appeal or that any

10   other extraordinary circumstances exist to support their request for relief from this

11   Court's order.   Indeed, this Court provided Plaintiffs with leave to amend their

12   complaint by July 31, 2020 and yet Plaintiffs let that deadline come and go without

13   filing an amended pleading.  Having failed to amend their complaint by the July 31,

14   2020 deadline, Plaintiffs cannot now attempt to revive their stale claims by reference

15   to the State's updated directives for religious services when Plaintiffs' pleadings do

16   not encompass such.

17        In short, Plaintiffs have not met the foundational criterion for bringing their

18   motion for reconsideration as to the dismissal of the COSB Defendants and their

19   motion should be rejected for this reason alone.

20   **IV.   PLAINTIFFS' COMPLAINT AGAINST THE COSB DEFENDANTS**

21        **REMAINS MOOT**

22        It is undisputed that the COSB has rescinded its challenged Public Health

23   Orders that were issued in March and April 2020 at the start of the pandemic.

24   Plaintiffs do not, and cannot, claim otherwise.  And the "recent event" Plaintiffs use

25   as the basis for their motion for reconsideration, namely the State's July 13, 2020

26   directive, has no bearing on the viability of any of the claims as against the COSB

27   Defendants.  Rather, Plaintiffs' complaint as against the COSB remains moot and

28   judgment should be entered in favor of the COSB Defendants forthwith.

**A.  The Challenged COSB Public Health Orders Were Rescinded And No New COSB Orders Have Been Issued.**

Plaintiffs impermissibly attempt to use their motion for reconsideration as a vehicle to reargue points already raised in their opposition to the COSB's motion to dismiss.  As discussed in detail below, Plaintiffs' specious motion does not offer any basis for this Court to reexamine its original ruling finding this case moot.

The doctrine of mootness is embedded in the Article III's case or controversy requirement and mandates that an actual, ongoing controversy exist at all stages of federal court proceedings.  *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086 (9th Cir. 2011).  While voluntary cessation of challenged conduct may not render a case moot, a statutory change is treated quite differently and usually renders a case moot. *Maldonado v. Morales*, 556 F.3d 1037, 1042 (9th Cir. 2009); *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1031–32 (9th Cir. 2006).  The courts "should assume that a legislative body is acting in good faith in repealing or amending a challenged legislative provision or allowing it to expire[.]"  *Bd. of Trs. of Glazing Health & Welfare Trust v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019). Accordingly, a statutory change renders the case moot "even if the legislature possesses the power to reenact the statute again after the lawsuit is dismissed." *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014).

Plaintiffs argue in their motion for reconsideration (as they did in their opposition to the COSB's motion to dismiss) that "Defendants retain the ability to issue public health guidelines" and thus the case is not moot.  See Dkt. 79 (Mtn for Reconsideration, at 4:5-6).  Plaintiffs' position is without merit.  While the COSB may have the ability to issue new orders, Plaintiffs' unsubstantiated speculation that it might do so does not revive their stale case.  Rather, any court ruling regarding hypothetical and speculative future COSB orders does not meet the Article III case or controversy requirement and would be an impermissible advisory opinion.  *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91-92 (2013); *see also Seven Words LLC v.*

SAN BERNARDINO COUNTY DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
RECONSIDERATION OF COURT'S JULY 8, 2020 ORDER GRANTING MOTIONS TO DISMISS

1   *Network Solutions*, 260 F.3d 1089, 1095 (9th Cir. 2001).  Said another way, the COSB
2   Public Health Orders are "off the books" and thus adjudicating their constitutionality
3   is moot.  *See Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020) (governor's stay at
4   home order expired and it was speculative at best as to what restrictions would be
5   reinstituted).  Just as when this Court issued its July 8, 2020 ruling, there is no live
6   controversy and nothing left for this Court to enjoin.  See Dkt. 76 (Court's July 8,
7   2020 Minute Order Granting All Defendants' Motions to Dismiss, at p. 5).

8       Plaintiffs' reference to Judge Mendez' recent ruling in *Givens v. Newsom*, does
9   not change this analysis.  Indeed, Judge Mendez' analysis supports the COSB's
10  position.   Specifically, Judge Mendez discussed the *Rosebrock* case for the
11  proposition that there is a critical distinction between a law that has been repealed or
12  rescinded versus one that has been merely modified by policy change but still remains
13  in effect. See Dkt. 79-3 (Dhillon Decl., Ex. 3 [Transcript, at 15:20-23]).  In *Rosebrock*,
14  the Ninth Circuit explained that a statutory change usually renders a case moot even
15  if the legislature possesses the power to reenact the statute whereas when there is only
16  a policy change or voluntary cessation regarding the challenged conduct, the
17  government bears a heavier burden in establishing mootness.  *Rosebrock*, 745 F.3d at
18  971.  Judge Mendez analyzed the State's mootness claim as a policy change.  See Dkt.
19  79-3 (Dhillon Decl., Ex. 3 [Transcript, at 17:21-18:10]).  By contrast, in this instance
20  it is undisputed that the COSB has not merely made a policy change but instead has
21  rescinded in full the challenged Public Health Orders more than four months ago.
22  Courts assume that a legislative body has acted in good faith when rescinding
23  challenged orders and there is no evidence that the COSB is likely to readopt the
24  challenged Public Health Orders here as would be required to defeat this strong
25  presumption of mootness.  *See Bd. of Trs. of Glazing Health*, 941 F.3d at 1199.
26  Indeed, the passage of some four months is clear indicia that the rescission is
27  permanent and the COSB intends to place sole reliance on the State's Health Orders.
28  The COSB's challenged Public Health Orders remain rescinded and the mere

SAN BERNARDINO COUNTY DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
RECONSIDERATION OF COURT'S JULY 8, 2020 ORDER GRANTING MOTIONS TO DISMISS

1  possibility that the COSB could issue new orders does not create a live case or
2  controversy.  This case is moot as to the COSB Defendants.

3  **B.      The State's Updated July 13, 2020 Directives Are Irrelevant To The**
4  **Mootness Analysis Regarding The COSB Defendants.**

5  Plaintiffs' entire motion for reconsideration hinges on their argument that the
6  State issued updates to the State's directives for worship services on July 13, 2020.
7  But this State action is irrelevant as to any current or future action by the COSB.
8  Plaintiffs' unfounded attempt to lump the legally distinct State and County actors into
9  one bundle must be rejected.

10  Specifically, while it is unclear on what basis Plaintiffs believe the State's July
11  13, 2020 directive impacts the analysis as to the COSB Defendants, it appears they
12  may be attempting to trigger the "capable of repetition, yet evading review" exception
13  to mootness.  This exception is unavailing.  Specifically, the "capable of repetition,
14  yet evading review" exception only applies in "exceptional situations" where the
15  challenged conduct cannot be fully litigated before its cessation or expiration and
16  where there is a reasonable expectation that the challenger will again be subject to the
17  same action.  *See Weinstein v. Bradford*, 423 U.S. 147, 149 (1975).  This case is not
18  such an exception.

19  Plaintiffs' motion for reconsideration contains a meager 1.5 pages of argument
20  that neither articulates any exceptional situation to overcome mootness nor identifies
21  any evidence to support a claim that the rescindment of the challenged Public Health
22  Orders was an attempt to evade review so that the COSB could cycle through a
23  process of rescinding and then reinstating the same restrictions in the future.  The
24  COSB rescinded its Public Health Orders over four months ago and has expressed no
25  intention of reviving them.  Likewise, there is nothing to suggest that the State's
26  issuance of its July 13, 2020 directive portends any future action by the COSB.
27  Instead, the COSB's rescindment of its challenged Public Health Orders evidences
28  the contrary as it directs individuals to review the State's Orders alone to determine

8                          Case No. 5:20-cv-00755-JGB-KKK
SAN BERNARDINO COUNTY DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
RECONSIDERATION OF COURT'S JULY 8, 2020 ORDER GRANTING MOTIONS TO DISMISS

1    what restrictions may apply to their gatherings and activities.  See Dkt. 69 (RJN, Ex.

2    J [COSB May 8, 2020 Public Health Order])  It is true that the government's responses

3    to this ongoing pandemic must be dynamic and fact intensive (*see South Bay United*

4    *Pentecostal v. Newsom*, 140 S.Ct. 1613 (2020)) but whether the COSB issues future

5    orders to address future health and safety issues is not recurring action that can trigger

6    the capable of repetition but evading review exception to mootness.  In sum, while

7    Plaintiffs put great emphasis on the State's issuance of updated directives on July 13,

8    2020 after this Court's grant of the motions to dismiss, the State's actions do not

9    trigger any exception or change the mootness analysis as to the COSB Defendants.

10 **V.**    **CONCLUSION**

11       For all the forgoing reasons, the COSB Defendants respectfully request that

12 this Court deny Plaintiffs' motion for reconsideration of the Court's July 8, 2020

13 ruling granting the COSB Defendants' motion to dismiss and that the Court

14 immediately dismiss the COSB Defendants and enter Judgment in favor of the COSB

15 Defendants in this matter.

16 DATED:  September 14, 2020      MEYERS, NAVE, RIBACK, SILVER &
17      WILSON

18

19      By: /s/ Deborah J. Fox
20      DEBORAH J. FOX
     MARGARET W. ROSEQUIST
21      MATTHEW B. NAZARETH
     Attorneys for Defendants
22      DR. ERIN GUSTAFSON, SHERIFF
23      JOHN MCMAHON, SUPERVISOR
     ROBERT A. LOVINGOOD,
24      SUPERVISOR JANICE RUTHERFORD,
     SUPERVISOR DAWN ROWE,
25      SUPERVISOR CURT HAGMAN, AND
26      SUPERVISOR JOSIE GONZALES

27 3575524.3

28

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 14th day of September, 2020, I electronically filed the foregoing **SAN BERNARDINO COUNTY DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF COURT'S JULY 8, 2020 ORDER GRANTING MOTIONS TO DISMISS** with the Clerk of the Court using the CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Gale L. Matteson
Gale L. Matteson

10                                              Case No. 5:20-cv-00755-JGB-KKK

COSB-SER-36

1   HARMEET K. DHILLON (SBN: 207873)
    harmeet@dhillonlaw.com
2   MARK P. MEUSER (SBN: 231335)
    mmeuser@dhillonlaw.com
3   GREGORY R. MICHAEL (SBN: 306814)
    gmichael@dhillonlaw.com
4   DHILLON LAW GROUP INC.
5   177 Post Street, Suite 700
    San Francisco, California 94108
6   Telephone: (415) 433-1700
7   Facsimile: (415) 520-6593

8

9   *Attorneys for Plaintiffs*

10

11   ## UNITED STATES DISTRICT COURT

12   ## CENTRAL DISTRICT OF CALIFORNIA

13   ## EASTERN DIVISION

14

| | |
|---|---|
| **WENDY GISH**, an individual, *et al.*, | Case Number: 5:20-cv-00755-JGB-KK |
| Plaintiffs, | |
| v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION** |
| **GAVIN NEWSOM**, in his official capacity as the Governor of California, *et al.*, | |
| Defendants. | Judge:     Honorable Jesus G. Bernal |
| | Date:      October 5, 2020 |
| | Time:      9:00 a.m. |
| | Courtroom:  1 |



**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................1

FACTUAL BACKGROUND.............................................................................1

LEGAL STANDARDS ......................................................................................3

ARGUMENT.......................................................................................................3

I.   DEFENDANTS' RECENT REINSTATEMENT OF THEIR BAN ON
     INDOOR RELIGIOUS SERVICES DEMONSTRATES THAT PLAINTIFFS'
     CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF ARE NOT
     MOOT. ................................................................................................3

II.  RECONSIDERATION IS PROPER BECAUSE THE RENEWED BAN WAS
     ISSUED FIVE DAYS AFTER THIS COURT ISSUED ITS ORDER
     DISMISSING PLAINTIFFS' CLAIMS AS MOOT. ..........................................4

CONCLUSION ....................................................................................................5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs' MPA ISO                        ii            Case No. 5:20-cv-00755-JGB-KK
Motion for Reconsideration

1

# TABLE OF AUTHORITIES

2

3

## CASES

4

*Givens, et al. v. Newsom, et al.*,
    Case No. 2:20-CV-00852 (E.D. Cal. July 14, 2020).................................4

5

*In re Pacific Far East Lines, Inc.*,
    889 F.2d 242 (9th Cir. 1989). ...................................................................3

6

7

*Lemoge v. United States*,
    587 F.3d 1188 (9th Cir. 2009). ................................................................3

8

9

*Rosebrock v. Mathis*,
    745 F.3d 963 (9th Cir. 2014). ...................................................................4

10

11

## RULES

12

Fed. R. Civ. P. 60(b)..................................................................................3, 5

13

Local Rule 7-18. ......................................................................................3, 5

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs' MPA ISO                    iii          Case No. 5:20-cv-00755-JGB-KK
Motion for Reconsideration

## INTRODUCTION

Defendants have reimplemented their ban on indoor worship services across much of California, preventing Plaintiffs from practicing their faiths in accordance with their sincerely held beliefs. They did so mere days after securing this Court's Order dismissing Plaintiffs' claims as moot. Defendants' decision to allow limited, in-person worship services—a fact this Court relied heavily on when dismissing Plaintiffs' claims as moot—lasted little more than the duration of the pendency of Defendants' motions to dismiss.

As illustrated by this development, Plaintiffs' claims are not moot. Defendants' authority to criminalize indoor religious services relies on Executive Order N-33-20, the order challenged by Plaintiffs in their initial Complaint ("State Order"). The State Order remains in effect. As such, Defendants were able to reinstate their ban on indoor religious services without issuing any new executive order. All that was required was a simple proclamation by public health officials that indoor worship services would be deemed criminal once more, and, thus, it became so under the State Order.

Injunctive relief remains appropriate in this case, including to enjoin the State Defendants from issuing directives criminalizing religious practices, and to enjoin the County Defendants from enforcing those orders. Declaratory relief is also appropriate considering the importance of the issues presented by Plaintiffs' claims and likelihood that the circumstances giving rise to this dispute will be repeated. Accordingly, Plaintiffs respectfully request that the Court grant this Motion.

## FACTUAL BACKGROUND

On March 19, 2020, Newsom issued Executive Order N-33-20, which directed all California residents to heed the State's public health directives relating to COVID-19, including the March 19, 2020 Order of the State Public Health Officer prohibiting



Plaintiffs' MPA ISO
Motion for Reconsideration

1

Case No. 5:20-cv-00755-JGB-KK

1    Plaintiffs' participation in indoor worship services. Complt. (Dkt. 1), ¶ 31.[1] Riverside

2    and San Bernardino Counties issued similar orders, which they rescinded after

3    Plaintiffs filed suit. The counties have indicated, however, that they will enforce the

4    State's Order. Dkt. 68-2, p. 61, 78-79; Dkt. 72, p. 13.

5         Plaintiffs filed their Complaint in this action on April 13, 2020, asserting that

6    Defendants' criminalization of in-person worship services violated Plaintiffs'

7    constitutional rights. Dkt. 1. On April 23, 2020, the Court denied Plaintiffs' request

8    for a temporary restraining order and preliminary injunction. Dkt. 51. Plaintiffs are

9    appealing that ruling to the Ninth Circuit. Dkt. 52.

10        On May 25, 2020, Defendants issued amended guidelines that allowed for in-

11   person religious services. Dkt. 69-1. Two days later, on May 27, 2020, Defendants

12   collectively filed three motions to dismiss, Dkts. 66-68, asserting, in relevant part,

13   that Plaintiffs' claims were mooted by Defendants updating the public health

14   directives to permit limited in-person worship. This Court agreed and granted the

15   motions on July 8, 2020, without the benefit of a hearing on the matter. Dkt. 76.

16        On July 13, 2020—less than one week after securing the dismissal of

17   Plaintiffs' claims on mootness grounds—Defendants amended their guidelines once

18   again and re-criminalized in-person religious services. Dhillon Decl., Ex. 1

19   (California Department of Public Health updated closure guidance, dated July 13,

20   2020). The criminal ban on indoor worship services remains in effect across several

21   counties, including Riverside and San Bernardino Counties, as of the date of this

22   filing. *Id.*, Ex. 2 (county monitoring list).

23

24

25

---

26   [1] On May 4, 2020, Defendant Newsom signed Executive Order N-60-20, which
references EO N-33-20 and provides that "[a]ll residents are directed to continue to
27   obey State public health officials." Dkt. 69-1, p. 45.

28

---



Plaintiffs' MPA ISO                    2         Case No. 5:20-cv-00755-JGB-KK
Motion for Reconsideration

**LEGAL STANDARDS**

Local Rule 7-18 provides a motion for reconsideration may be made on any of the following grounds:

(a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or

(b) the emergence of new material facts or a change of law occurring after the time of such decision, or

(c) a manifest showing of a failure to consider material facts presented to the Court before such decision.

In addition, Rule 60 of the Federal Rules of Civil Procedure authorizes relief from an order resulting from "any . . . reason that justifies relief," subject to an "extraordinary circumstances" standard, so as not to permit "a second bite at the apple," but to avoid inequitable results and accomplish justice. Fed. R. Civ. P. 60(b); *In re Pacific Far East Lines, Inc.*, 889 F.2d 242, 250 (9th Cir. 1989). A request to reconsider made under Rule 60(b) of the Federal Rules of Civil Procedure is timely when brought "within a reasonable time" and no more than one year after the relevant order was issued. *Lemoge v. United States*, 587 F.3d 1188, 1196-1197 (9th Cir. 2009).

**ARGUMENT**

**I.    DEFENDANTS' RECENT REINSTATEMENT OF THEIR BAN ON INDOOR RELIGIOUS SERVICES DEMONSTRATES THAT PLAINTIFFS' CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF ARE NOT MOOT.**

This Court's Order dismissing Plaintiffs' claims as moot relied heavily on the fact that Defendants had lifted their ban on religious services: "[i]t is undisputed that the law Plaintiffs seek to enjoin no longer restricts Plaintiffs from holding in-person



Plaintiffs' MPA ISO                                    3                Case No. 5:20-cv-00755-JGB-KK
Motion for Reconsideration

1   religious services." Order p. 6. As made clear by recent events, however, this is not

2   the case; the underlying executive order challenged by Plaintiffs in their Complaint,

3   EO N-33-20, was never lifted and, in fact, was expressly continued in subsequent

4   executive orders. Dkt. 69-1, p. 45.

5        Pursuant to that order, Defendants retain the ability to issue public health

6   guidelines, at their sole discretion, and to thereafter enforce those guidelines as they

7   would any other criminal law. *See* Dhillon Decl., Ex. 1. (reinstating the ban on indoor

8   religious services). The State Order remains in effect, as it has since March 19, 2020.

9   As such, Plaintiffs' claims remain valid, as does their need for injunctive and

10  declaratory relief. Defendants' recent reinstatement of their criminal ban on religious

11  services mere days after this Court issued its Order dismissing Plaintiffs' claims as

12  moot is a regrettable illustration of that reality. [2]

13  **II.    RECONSIDERATION IS PROPER BECAUSE THE RENEWED
14          BAN WAS ISSUED FIVE DAYS AFTER THIS COURT ISSUED
            ITS ORDER DISMISSING PLAINTIFFS' CLAIMS AS MOOT.**

15

16       Plaintiffs could not bring these new facts to the Court's attention prior to the

17  Court's ruling on July 8 because the facts did not exist at that time. Defendants

18  renewed their ban on certain religious services on July 13, 2020, five days after the

19  Court issued the Order dismissing Plaintiffs' claims as moot. Dhillon Decl., Ex. 1.

20  Upon evaluating the changed circumstances, Plaintiffs' counsel promptly met and

21

22  _____

    [2] Recently, in *Givens, et al. v. Newsom, et al.*, Case No. 2:20-CV-00852 (E.D. Cal.
23  July 14, 2020), Judge John Mendez of the Eastern District of California denied
    Defendants Newsom and Becerra's motions to dismiss the plaintiffs' free-speech
24  claims on mootness grounds. As they have done here, Defendants Newsom and
    Becerra argued that the plaintiffs' claims in that case were mooted by the State
25  revising its COVID-19 guidelines to allow outdoor protests. In issuing its oral ruling
    on the motions to dismiss, the court acknowledged this Court's July 8, 2020 Order,
26  but declined to arrive at the same result. Dhillon Decl., Ex. 3, pp. 14-15 (discussing
27  extensively *Rosebrock v. Mathis*, 745 F.3d 963, 971-972 (9th Cir. 2014)).

28

_____



Plaintiffs' MPA ISO                    4         Case No. 5:20-cv-00755-JGB-KK
Motion for Reconsideration

1   conferred with Defendants' counsel and filed the instant Motion. Accordingly, the

2   Court should properly grant Plaintiffs' requested relief pursuant to Local Rule 7-18

3   and Fed. R. Civ. P. 60(b)(6).

4                                  **CONCLUSION**

5        Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for

6   Reconsideration and issue an Order denying Defendants' motions to dismiss (Dkts.

7   66-68).

8                                      Respectfully submitted,

9   Date: August 17, 2020              DHILLON LAW GROUP INC.

10                          By:   /s/ Harmeet K. Dhillon

11                                Harmeet K. Dhillon (SBN: 207873)
                                  Mark P. Meuser (SBN: 231335)
12                                Gregory R. Michael (SBN: 306814)

13                                *Attorneys for Plaintiffs*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



Plaintiffs' MPA ISO              5        Case No. 5:20-cv-00755-JGB-KK
Motion for Reconsideration

1  Deborah J. Fox (SBN: 110929)
   dfox@meyersnave.com
2  Margaret W. Rosequist (SBN: 203790)
   mrosequist@meyersnave.com
3  Matthew B. Nazareth (SBN: 278405)
   mnazareth@meyersnave.com
4  MEYERS, NAVE, RIBACK, SILVER & WILSON
   707 Wilshire Blvd., 24th Floor
5  Los Angeles, California 90017
   Telephone: (213) 626-2906
6  Facsimile: (213) 626-0215

7  Michelle D. Blakemore, County Counsel (SBN: 110474)
   Penny Alexander-Kelley, Chief Assistant
8  County Counsel (SBN: 145129)
   Office of County Counsel
9  County of San Bernardino
   385 North Arrowhead Avenue
10 San Bernardino, California 92415
   Telephone: (909) 387-5455
11 Facsimile: (909) 387-5462

12 Attorneys For Defendants

13 DR. ERIN GUSTAFSON, SHERIFF JOHN MCMAHON,
   SUPERVISOR ROBERT A. LOVINGOOD, SUPERVISOR
14 JANICE RUTHERFORD, SUPERVISOR DAWN ROWE,
   SUPERVISOR CURT HAGMAN, AND SUPERVISOR
15 JOSIE GONZALES

16          **UNITED STATES DISTRICT COURT**

17     **CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION**

18 WENDY GISH, an individual;          Case No. 5:20-cv-00755-JGB-KKK
   PATRICK SCALES, an individual;
19 JAMES DEAN MOFFATT, an             **SAN BERNARDINO COUNTY**
   individual; and BRENDA WOOD, an     **DEFENDANTS' NOTICE OF**
20 individual,                         **MOTION AND MOTION TO**
                                       **DISMISS; MEMORANDUM OF**
21          Plaintiffs,                **POINTS AND AUTHORITIES**

22     v.                             Hearing Date: July 13, 2020
                                      Time:          9:00 am
23 GAVIN NEWSOM, in his official
   capacity as to Governor of California; Hon. Jesus G. Bernal
24 XAVIER BECERRA, in his official
   capacity as the Attorney General of  Trial Date:    None Set
25 California; ERIN GUSTAFSON, in her
   official capacity as the San Bernardino
26 County Acting Public Health Officer;
   JOHN MCMAHON, in his official
27
   [CONTINUED ON NEXT PAGE]
28

COSB-SER-45

capacity as the San Bernardino County Sheriff; ROBERT A. LOVINGGOOD, in his official capacity as a San Bernardino County Supervisor; JANICE RUTHERFORD, in her official capacity as a San Bernardino County Supervisor; DAWN ROWE, in her official capacity as a San Bernardino County Supervisor; CURT HAGMAN in his official capacity as a San Bernardino County Supervisor; JOSIE GONZALES, in his official capacity as a San Bernardino County Supervisor; CAMERON KAISER, in his official capacity as the Riverside County Public Health Officer; GEORGE JOHNSON in his official capacity as the Riverside County Executive Officer and Director of Emergency Services; CHAD BIANCO, in his official capacity as the Riverside County Sheriff; KEVIN JEFFRIES, in his official capacity as a Riverside County Supervisor; KAREN SPIEGEL, in her official capacity as a Riverside County Supervisor; CHUCK WASHINGTON, in his official capacity as a Riverside County Supervisor; V. MANUAL PEREZ, in his official capacity as a Riverside County Supervisor; and JEFF HEWITT, in his official capacity as a Riverside County Supervisor,

                Defendants.

Case No. 5:20-cv-00755
SAN BERNARDINO COUNTY DEFENDANTS' MOTION TO DISMISS

COSB-SER-46

**NOTICE OF MOTION**

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

   **PLEASE TAKE NOTICE** that on July 13, 2020 at 9:00 a.m. at United States Courthouse, 3470 Twelfth Street, Riverside, CA 92501-3801, Courtroom 1, Defendants Dr. Erin Gustafson, Sheriff John McMahon, Supervisor Robert A. Lovingood, Supervisor Janice Rutherford, Supervisor Dawn Rowe, Supervisor Curt Hagman, and Supervisor Josie Gonzales ("COSB Defendants"), will move to dismiss the Complaint ("Complaint") of Plaintiffs Wendy Gish, Patrick Scales, James Dean Moffatt, and Brenda Wood, ("Plaintiffs") under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

   This Motion is based on this Notice of Motion and supporting Memorandum of Points and Authorities, all pleadings in this action, any request for judicial notice, and any other documents that are now on file or that may be on file in this action at the time of the hearing; and such further oral or written argument as may be presented at the time of the hearing or otherwise considered by the Court.  This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on May 12, 2020.

DATED:  May 27, 2020

MEYERS, NAVE, RIBACK, SILVER & WILSON

By:   /s/ Deborah J. Fox
     DEBORAH J. FOX
     MARGARET W. ROSEQUIST
     MATTHEW B. NAZARETH
     Attorneys for Defendants
     DR. ERIN GUSTAFSON, SHERIFF JOHN MCMAHON, SUPERVISOR ROBERT A. LOVINGOOD, SUPERVISOR JANICE RUTHERFORD, SUPERVISOR DAWN ROWE, SUPERVISOR CURT HAGMAN, AND SUPERVISOR JOSIE GONZALES

3

Case No. 5:20-cv-00755

1
2

# **TABLE OF CONTENTS**

**Page**

3  I.    INTRODUCTION ...................................................................1

4  II.   FACTUAL AND PROCEDURAL BACKGROUND.....................2

5        A.    The State Declares an Emergency and Mandates Shelter in Place
              Except for Essential Critical Workers ..................................2
6
        B.    The County's Declared Emergency and Public Health Orders ..............3
7
        C.    Plaintiffs File the Instant Lawsuit ......................................6
8
9  III.  LEGAL STANDARD.............................................................6

10 IV.   ARGUMENT ......................................................................7

11       A.    Plaintiffs' Claims Against the COSB Defendants Should Be
              Dismissed as Moot.........................................................7
12
        B.    Plaintiffs' Federal and State Constitutional Claims Also All Fail
              on the Merits Because the COSB Public Health Orders Are Valid
13            Under the State Of Emergency Standard of Review.............................8

14       C.    Plaintiffs' Claims Also Fail Under Traditional Constitutional
              Analysis Even If *Jacobson* Were Not Applicable................................10
15
              1.    Free Exercise Claims .................................................10
16
                    (a)    Plaintiffs' Free Exercise Claims Fail Because the
17                         COSB Public Health Orders Meet With the
                           Requirements for Neutral Laws of General
18                         Application. ...................................................10

19                  (b)    The Public Health Orders Also Meet With the Strict
                           Scrutiny Standard of Review............................................12
20
              2.    Establishment Claims.................................................14
21
              3.    Free Assembly and Free Speech Claims ..................................15
22
              4.    Due Process Claims ..................................................16
23
              5.    Equal Protection Claim ...............................................17
24
              6.    California Constitutional Right to Liberty...............................18
25
   V.    CONCLUSION ...................................................................18
26

27
28

SAN BERNARDINO COUNTY DEFENDANTS' MOTION TO DISMISS

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Federal Cases**

*Abagninin v. AMVAC Chem. Corp.*,
545 F.3d 733 (9th Cir. 2008)....................................................................7

*Am. Family Ass'n, Inc. v. City & Cnty. of San Francisco*,
277 F.3d 1114 (9th Cir. 2002)...........................................................10, 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................6

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................6

*Cantwell v. Connecticut*,
310 U.S. 296 (1940)..............................................................................10

*Cassell v. Snyders*,
No. 20 C 50153, 2020 WL 2112374 (N.D. Ill. May 3, 2020) ...........9

*Church of Lukumi Babalu Aye, Inc. v. Hialeah*,
508 U.S. 520 (1993).........................................................................12, 13

*Cnty. Court of Ulster Cnty., N. Y. v. Allen*,
442 U.S. 140 (1979).............................................................................7

*Cross Culture Christian Ctr. v. Newsom*,
No. 220CV00832JAMCKD, 2020 WL 2121111 (E.D. Cal. May 5,
2020) .................................................................................................8, 9

*De Jonge v. Oregon*,
299 U.S. 353 (1937)..............................................................................15

*Engquist v. Oregon Dept. of Agric.*,
478 F.3d 985 (9th Cir 2007)...............................................................17

*Everson v. Board of Education*,
330 U.S. 1 (1947)..................................................................................14

*Givens v. Newsom*,
No. 220CV00852, 2020 WL 2307224 (E.D. Cal. May 8, 2020)........9

ii

*Jacobson v. Commonwealth of Massachusetts*,
197 U.S. 11 (1905)..................................................................8, 9, 10

*Jew Ho v. Williamson*,
103 F. 10 (C.C.N.D. Cal. 1900) .......................................................18

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001)....................................................7, 17

*Lemon v. Kurtzman*,
403 U.S. 602 (1971)..........................................................................14

*Lighthouse Fellowship Church v. Northam*,
No. 2:20CV204, 2020 WL 2110416 (E.D. Va. May 1, 2020) ...........9

*Maldonado v. Morales*,
556 F.3d 1037 (9th Cir. 2009)............................................................8

*Mathews v. Eldridge*,
424 U.S. 319 (1976)..........................................................................16

*Menotti v. City of Seattle*,
409 F.3d 1113 (9th Cir. 2005)..........................................................16

*Miller v. Reed*,
176 F.3d 1202 (9th Cir. 1999)..........................................................10

*Nat'l Ass'n of Boards of Pharmacy v. Bd. of Regents of the Univ. Sys.*
*of Georgia*,
633 F.3d 1297 (11th Cir. 2011)..........................................................7

*O'Brien v. Welty*,
818 F.3d 920 (9th Cir. 2016).............................................................7

*Roberts v. U.S. Jaycees*,
468 U.S. 609 (1984)..........................................................................15

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004).............................................................6

*Sagana v. Tenorio*,
384 F.3d 731 (9th Cir. 2004)............................................................17

*Shelby Cnty., Ala. v. Holder*,
570 U.S. 570 U.S. 529, 590 (2013) ..................................................14

Case No. 5:20-cv-00755
SAN BERNARDINO COUNTY DEFENDANTS' MOTION TO DISMISS

*Stormans, Inc. v. Wiesman*,
   794 F.3d 1064 (9th Cir. 2015)................................................ 10, 11, 12

*Stromberg v. California*,
   283 U.S. 359 (1931).......................................................................15

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
   455 U.S. 489 (1982).......................................................................17

*Ward v. Rock Against Racism*,
   491 U.S. 781 (1989)................................................................ 13, 16

*Washington v. Glucksberg*,
   521 U.S. 702 (1997).......................................................................16

**Federal Statutes**

Federal Rule of Civil Procedure 12(b)(1)............................................6, 7

Federal Rule of Civil Procedure 12(b)(6) ..............................................6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COSB-SER-51

## I.     INTRODUCTION

It takes collective action to effectively fight a pandemic.  People stand unified in their desire to combat the highly contagious, and often deadly coronavirus, known as COVID-19, that is circulating through local communities, the state, the country, and the world at large.  But this unified approach is undercut by those who claim that their personal beliefs regarding the importance of in-person religious services must be given special dispensation above other in-person gatherings.  This position poses a risk to everyone in the community as every out-of-home contact increases the risk of spreading a virus that has no current cure or vaccine.  Given that widespread testing is not yet available, it is impossible to know who might be a silent carrier of the disease or to properly limit those who are infected from interacting with others.   Thus, unrestricted in-person gatherings imperil not just the health of Plaintiffs' congregation but also the health of the wider community as congregants circulate through grocery stores, visit the doctor, go to the pharmacy, or walk around the block.

The County of San Bernardino ("COSB") initially mirrored the stay at home orders of the State to prohibit public gatherings.  As the curve has been "flattened," COSB has rescinded those orders and the State permits religious services at reduced occupancy.  This has mooted Plaintiffs' entire challenge because the COSB public health orders at issue in the Complaint have been rescinded, so Plaintiffs' request for declaratory and injunctive relief have been rendered meaningless.  This basis alone supports a dismissal.

In addition, Plaintiffs' allegations that the original stay at home orders violate their rights under the United States and California Constitutions, including their right to free exercise of religion, freedom of assembly, and freedom of speech, also fail to state a claim as a matter of law.  As this Court has already recognized in denying Plaintiffs' request for a temporary restraining order, governments are afforded substantial deference during emergencies, such as a global pandemic, in order to protect the health and safety of their citizens.  And all of Plaintiffs' Constitutional

1　challenges fail as a matter of law under this deferential standard.  Moreover, even

2　under a traditional constitutional analysis, COSB's public health orders pass

3　constitutional muster.  The restrictions are laws of general applicability—they apply

4　to all residents and visitors alike within the County and apply to all in-person

5　gatherings whether secular or religious.  Plaintiffs' comparisons of religious services

6　to critical infrastructure sectors are based on a false equivalency and should be

7　rejected.  Specifically, the critical infrastructure sector is directed at essential singular

8　and transitory transactions (such as shopping for food and medicine) whereas

9　gatherings, such as Plaintiffs' religious services, are by design communal experiences

10　for which individuals come together for extended periods of time.  The critical

11　infrastructure sectors continue to operate to ensure that people have what they need

12　to physically survive and are directed at allowing food production and medical

13　services to remain open.  Without the critical infrastructure sectors more citizens

14　would become ill and possibly die.

15　　　　Thus, Plaintiffs' Complaint fails to offer facts that would allow a court to find

16　any violation of their Constitutional rights and each and every claim should be

17　dismissed.  Further, because the facts are not in dispute and there is nothing more

18　Plaintiffs could offer, leave to amend should be denied.

19　**II.　　FACTUAL AND PROCEDURAL BACKGROUND**

20　　　　**A.　　The State Declares an Emergency and Mandates Shelter in Place**

21　　　　　　　**Except for Essential Critical Workers**

22　　　　On March 4, 2020, Governor Gavin Newsom declared a State of Emergency in

23　California as a result of the threat of COVID-19 with the singular goal of protecting

24　the public health and safety for all Californians.  *See* COSB Defendants' Request for

25　Judicial Notice ("RFJN"), Exh. A.   Then, on March 16, 2020, the California

26　Department of Public Health issued "Guidance for the Prevention of COVID-19

27　Transmission for Gatherings."  RFJN, Exh. B.  The State declared that all gatherings

28　should be postponed or cancelled.  Gathering is defined in a neutral manner and

1  applies to "any event or convening that brings together people in single room or single

2  space at the same time, such as an auditorium, stadium, arena, large conference room,

3  meeting hall, cafeteria or any other indoor or outdoor space." RFJN, Exh. B at 012.

4          This was followed on March 19, 2020 with the issuance by Governor Newsom

5  of Executive Order N-33-20, which directs all residents to shelter in place except as

6  needed to maintain a continuity of operations of defined critical infrastructure sectors.

7  *See* Dkt. 1-2 (Compl., Exh. 1).  Governor Newsom ordered "all individuals living in

8  the State of California to stay at home or at their place of residence except as needed

9  to maintain continuity of operations of the federal critical infrastructure sectors." Dkt.

10  1-2 at 1 (Compl., Exh. 1).  On March 22, 2020, the State Public Health Officer has

11  called out a list which designates the "Essential Critical Infrastructure Workers" who

12  are exempt from the shelter in place restrictions and designated to help state, local and

13  industry partners as they work to protect communities while ensuring the continuity

14  of functions critical to public health and safety, as well as economic and national

15  security.  The "critical infrastructure sectors" include "Faith based services that are

16  provided through streaming or other technology." RFJN, Exh. C at 025.  The State

17  has clarified that drive-in faith based services are allowed as "other technology." Dkt.

18  13 at 4–5.

19          These State Orders, which are the subject of Plaintiff's Complaint, precluded

20  public gatherings of all types, without regard to the content or subject of the gathering,

21  while still allowing faith-based services to stream services via the internet or to

22  conduct drive-in services.

23      **B.    The County's Declared Emergency and Public Health Orders**

24          The County of San Bernardino Board of Supervisors declared a Local Health

25  Emergency on March 10, 2020 based on the imminent and proximate threat to public

26  health based on the introduction of the novel and incurable COVID-19 virus.  RFJN,

27  Exh. D.  The County of San Bernardino's Proclamation of the Existence of the Local

28  Emergency calls out that with a population of over 2.1 million residents and home to

1  a high volume airport, there are significant risks to the substantial spreading of this

2  infectious disease.  See RFJN, Exh. E.  Indeed, the Board specifically recognized

3  these critical public health and safety issues and declared that COVID-19 is:

> [C]reating a condition of extreme peril to the safety of persons and
> property within the territorial limits of the County of San Bernardino
> which conditions are or are likely to be beyond the control of the
> services, personnel, equipment, and facilities of the County of San
> Bernardino.

7  RFJN, Exh. E at 034.

8       On March 17, 2020, following the directive of the Governor, COSB issued an

9  Order of the Health Officer of the County of San Bernardino Cancelling all Gatherings

10  mirroring the definition of gatherings used by the State.[1]  See RFJN, Exh. F.  The

11  County of San Bernardino Order of April 7, 2020 also imposed a shelter in place

12  restriction following the State's Order including allowing faith based services that are

13  provided through streaming or other technology as essential critical infrastructure

14  services that are permitted.  See Dkt. 1-3 (Compl., Exh. 2).  The following day, April

15  8, 2020, the County clarified that through April 12, 2020 drive-in religious services

16  would be allowed.  See RFJN, Exh. G.  The County also clarified that as to

17  enforcement:

> [T]he public is advised that although violation of a health order is a
> violation of the California Health and Safety Code, the County does not
> expect law enforcement to broadly impose citations on violators.  The
> expectation is that law enforcement will rely upon community members
> to use good judgment, common sense, and act in the best interest of their
> own health and the health of their loved ones and the community at large.

22  RFJN, Exh. G at 041.

23       COSB also issued an April 17, 2020 Public Health Officer Order providing that

24  the Governor's Executive Order N-33-20 limiting gatherings remains in effect and

---

[1] The various Orders of the COSB Health Officer referenced herein are collectively
referred to as "the COSB Public Health Orders" or collectively with the State Orders
as "the Orders".

Case No. 5:20-cv-00755

SAN BERNARDINO COUNTY DEFENDANTS' MOTION TO DISMISS

1  providing the following definition of gatherings:

2  > Public or private Gatherings, as defined, are hereby prohibited in the
3  > County. A "Gathering" is defined as any event or convening that brings
   > or is likely to bring together two or more people from more than one
4  > household or living unit in a single room or space at the same time, such
   > as an auditorium, stadium, arena, room, hall, or any other indoor or
   > outdoor space used for non-Essential purposes. This includes Gatherings
5  > at private residences of people who do not live at that residence.

6  RFJN, Exh. H at 050.

7       The definition precluding gatherings by San Bernardino County are aligned

8  with the State's definition of gatherings and applies across the board to all gatherings,

9  irrespective of the subject or nature of the gathering. In other words, the limitation is

10  content neutral and of general application as to all gatherings. And, San Bernardino

11  County also permits drive-in religious services in keeping with the directive from the

12  State. RFJN, Exh. I.

13       Then, on May 8, 2020, COSB rescinded the Public Health Orders. All previous

14  orders were rescinded—except the orders dated March 10, 2020 and May 8, 2020 that

15  are not at issue here—and COSB directed individuals to the State Orders to determine

16  what restrictions were still in effect. RFJN, Exh. J. In other words, as of May 8, 2020,

17  the COSB Public Health Orders at issue in Plaintiffs' complaint are no longer in

18  effect.

19       More recently, on Memorial Day, the State issued "Industry Guidance: Places

20  of Worship and Providers of Religious Services and Cultural Ceremonies" (referred

21  to herein as "Guidelines for Places of Worship"), allowing in-person religious

22  services to resume subject to guidelines designed to limit the risk of spreading the

23  virus and keeping rates of new infections from escalating. *See* RFJN, Exh. K. As

24  COSB is following the State guidance, it issued a May 25, 2020 News Release

25  explaining that the in-person religious services in COSB could resume subject to the

26  State's guidelines. *See* RFJN, Exh. L.

27  //

28  //

COSB-SER-56

## C.    Plaintiffs File the Instant Lawsuit

On April 13, 2020, Plaintiffs filed the instant suit alleging 11 claims of Federal Constitutional and State Constitutional rights violations: (1) First Amendment right to free exercise of religion, (2) First Amendment's Establishment Clause, (3) First Amendment right to freedom of speech, (4) First Amendment right to freedom of assembly, (5) Fourteenth Amendment right to due process (for vagueness), (6) Fourteenth Amendment right to due process (for substantive due process), (7) Fourteenth Amendment right to equal protection, (8) California Constitutional right to liberty, (9) California Constitutional right to freedom of speech, (10) California Constitutional right to assemble, and (11) California Constitutional right to free exercise and enjoyment of religion.  Plaintiffs immediately moved for a temporary restraining order, which this Court denied on April 23, 2020.  Dkt. 51.

## III.    LEGAL STANDARD

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the court's jurisdiction to hear a matter, and on that basis, courts may look outside the four corners of a complaint to rely on affidavits or other evidence properly brought before the court. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief can be granted.  To survive a motion to dismiss, a complaint must "show" that the plaintiff is entitled to relief by alleging factual content that states a plausible claim for relief on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678.  In that vein, mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Constitutional claims—both facial and as-applied challenges—are subject to dismissal under Rule 12(b)(6) if the alleged facts fail to state a claim.  *See*

1    *O'Brien v. Welty*, 818 F.3d 920, 929–32 (9th Cir. 2016).  In ruling on a 12(b)(6)

2    motion, a court can consider matters of public record that are subject to judicial notice.

3    *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).  Finally, "[l]eave

4    to amend may be denied if a court determines that allegation of other facts consistent

5    with the challenged pleading could not possibly cure the deficiency."  *Abagninin v.*

6    *AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) (citation and quotation

7    omitted).

8    **IV.  ARGUMENT**

9        **A.  Plaintiffs' Claims Against the COSB Defendants Should Be**

10          **Dismissed as Moot**

11       Plaintiffs' claims against the COSB Defendants should be dismissed in their

12    entirety as moot because the Public Health Orders upon which the claims are based

13    are no longer in effect.  Federal Rule of Civil Procedure 12(b)(1) permits a court to

14    dismiss a claim for lack of subject matter jurisdiction, including because there is no

15    justiciable "case or controversy."  See U.S. Const., Art. III, § 2.  When a claim is

16    moot, it no longer presents a "case or controversy" such that a favorable decision by

17    the court will affect the plaintiff.  *E.g.*, *Nat'l Ass'n of Boards of Pharmacy v. Bd. of*

18    *Regents of the Univ. Sys. of Georgia*, 633 F.3d 1297, 1308–09 (11th Cir. 2011).

19       Similarly, while federal courts have a duty to decide constitutional issues *when*

20    *necessary*, "they have an equally strong duty to avoid constitutional issues that need

21    not be resolved in order to determine the rights of the parties to the case under

22    consideration."  *Cnty. Court of Ulster Cnty., N. Y. v. Allen*, 442 U.S. 140, 154 (1979).

23    It is therefore incumbent upon Plaintiffs to demonstrate that a decision in their favor

24    would have some effect and that resolution of the constitutional claims is necessary

25    to resolve the dispute.  Here, they cannot make such a showing as to the COSB

26    Defendants.

27       Plaintiffs request that these Public Health Orders be declared void as

28    unconstitutional and that the COSB Defendants be enjoined from enforcing the Public

1   Health Orders.  Compl. at 34, ¶¶ A–B.  As of May 8, 2020, however, each of those

2   Public Health Orders has been vacated and is no force and effect.  RFJN, Exh. J.

3   Moreover, the State—and therefore COSB as well—now permit in-person religious

4   gatherings subject to occupancy restrictions.  RFJN, Exhs. K, L.  "A statutory change

5   . . . is usually enough to render a case moot, even if the legislature possesses the power

6   to reenact the statute after the lawsuit is dismissed."  *Maldonado v. Morales*, 556 F.3d

7   1037, 1042 (9th Cir. 2009).  Furthermore, there is no allegation that COSB intends to

8   readopt the prior Public Health Orders that could justify adjudication of these mooted

9   issues.  Thus, because the challenged COSB Public Health Orders are no longer in

10  effect, Plaintiffs' claims as to the COSB Defendants present no justiciable case or

11  controversy, and a Court's ruling on these issues would have no effect.

12      **B.      Plaintiffs' Federal and State Constitutional Claims Also All Fail on**

13              **the Merits Because the COSB Public Health Orders Are Valid**

14              **Under the State Of Emergency Standard of Review**

15          The Supreme Court has held that "a community has the right to protect itself

16  against an epidemic of disease which threatens the safety of its members."  *Jacobson*

17  *v. Commonwealth of Massachusetts*, 197 U.S. 11, 27 (1905).  Thus, a court's review

18  of temporary measures taken during such an emergency is not based on traditional

19  constitutional review.  Instead the court must look to whether the actions have a real

20  or substantial relation to the crisis and whether the measures are "beyond all question"

21  a "plain, palpable invasion" of clearly protected rights.  *Id.* at 31.  *Jacobson* arose in

22  the context of a due process challenge, though the decision does not limit its

23  application only to due process concerns.  In fact, its analysis addresses any "rights

24  secured by [] fundamental law."  *Id.*   Moreover, in the context of the rapidly-

25  developing body of case law addressing emergency public health orders to prevent

26  the spread of COVID-19, several courts have expressly held that *Jacobson*'s rationale

27  and constitutional review standard is applicable to the constitutional claims at issue

28  here.  *See, e.g.*, *Cross Culture Christian Ctr. v. Newsom*, No. 220CV00832JAMCKD,

2020 WL 2121111, at *1 (E.D. Cal. May 5, 2020); *Cassell v. Snyders*, No. 20 C 50153, 2020 WL 2112374, at *7 (N.D. Ill. May 3, 2020); *Givens v. Newsom*, No. 220CV00852, 2020 WL 2307224, at *3 (E.D. Cal. May 8, 2020); *Lighthouse Fellowship Church v. Northam*, No. 2:20CV204, 2020 WL 2110416, at *8 (E.D. Va. May 1, 2020).

As this Court has already concluded in denying Plaintiffs' request for a temporary restraining order, the State Orders and the COSB Orders—which implement and mirror the State Orders and are no more restrictive than the State Orders—meet the test under *Jacobson*. The State and COSB Orders are based on the scientific fact that limiting physical contact between people is widely recognized as the only effective way to slow the spread of COVID-19. As this Court previously recognized, the orders "require the physical distancing that is needed to slow the spread of the virus" and thus "have a substantial relation to the COVID-19 crisis." *See* Dkt. 51 at 6. Next, there is no "plain, palpable invasion" of Plaintiffs' right to free exercise of religion. While Plaintiffs may not conduct in-person services within the church, they may meet for religious services through various platforms that are available at no cost, over the phone, at drive-in services, or conduct services with family members inside their own home. Thus, "a wide swath of religious expression remains untouched by the Orders." *Id.* Therefore, under the emergency powers vested in the COSB, the Public Health Orders and their implementation are permissible.

Indeed, several courts have come to the same conclusion in the context of denying interlocutory relief seeking to enjoin similar public health orders in other states and municipalities across the country that were put in place to curb the spread of COVID-19. *See, e.g.*, *Cross Culture Christian Ctr.*, 2020 WL 2121111, at *1; *Cassell*, 2020 WL 2112374, at *7; *Givens*, 2020 WL 2307224, at *3; *Lighthouse Fellowship Church*, 2020 WL 2110416, at *8.

1    This Court has already concluded that *Jacobson* provides the applicable test for
2    Plaintiffs' Constitutional claims.   And Plaintiffs' Complaint is devoid of facts or
3    allegations that could support their claims under the deferential standard for
4    emergency powers.   These claims should all be dismissed.

5    **C.   Plaintiffs' Claims Also Fail Under Traditional Constitutional**
6    **Analysis Even If *Jacobson* Were Not Applicable**

7    **1.   Free Exercise Claims**

8    (a)   Plaintiffs' Free Exercise Claims Fail Because the COSB
9    Public Health Orders Meet With the Requirements for
10    Neutral Laws of General Application.

11    Plaintiffs' primary claims—for violation of the First Amendment and
12    California Constitutional right to free exercise—would fail under a traditional
13    analysis because the Public Health Orders also pass muster under traditional
14    constitutional analysis.   Specifically, Plaintiffs' constitutional challenges must be
15    rejected as the Public Health Orders and their implementation are neutral measures of
16    general application that meet with rational basis review.

17    The First Amendment's Free Exercise Clause applies to the states via the
18    Fourteenth Amendment.   U.S. Const. Amend. I; *Cantwell v. Connecticut*, 310 U.S.
19    296 (1940).  The right to exercise one's religion freely, however, "does not relieve an
20    individual of the obligation to comply with a valid and neutral law of general
21    applicability on the ground that the law proscribes (or prescribes) conduct that his
22    religion prescribes (or proscribes)." *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1075–
23    76 (9th Cir. 2015) quoting *Employment Div. v. Smith*, 494 U.S. 872, 879 (1990).   A
24    neutral law of general application need not be supported by a compelling government
25    interest even when the law has the incidental effect of burdening a particular religious
26    practice. *Id.*  Laws of general application like those at issue here, need only survive
27    rational basis review. *Miller v. Reed*, 176 F.3d 1202, 1206 (9th Cir. 1999).   The test
28    is the same under the California Constitution. *See Am. Family Ass'n, Inc. v. City &*

COSB-SER-61

1 | *Cnty. of San Francisco*, 277 F.3d 1114, 1124 (9th Cir. 2002).

2 |      Here, the COSB's Public Health Orders are neutral on their face and are

3 | generally applicable.  The COSB's Public Health Orders follow the Governor's

4 | Orders by requiring all California residents to stay at home or shelter in place except

5 | for certain critical infrastructure sectors as designated by the Governor.  These stay at

6 | home orders are clearly laws of general applicability, as they apply to all residents

7 | and visitors to the State and COSB alike.  In light of the global COVID-19 pandemic,

8 | the COSB's Public Health Orders were designed to mirror the Governor's Orders so

9 | as to address the public-health emergency threatening the entire state.  Plaintiffs do

10 | not dispute the reason for the COSB's Public Health Orders, but instead complain that

11 | the burden placed on their ability to meet for in-person religious services by the Public

12 | Health Orders unconstitutionally violates their free exercise of religion.  Not so.

13 | Neither Plaintiffs' church services, nor religious gatherings in general, are singled out

14 | or otherwise treated unfavorably.  Rather, the Public Health Orders are facially and

15 | operationally neutral as they are not directed at gatherings because of their religious

16 | motivations.  *See Stormans*, 794 F.3d at 1075–76.  Indeed faith-based services are

17 | recognized as essential businesses to the extent they offer services "through streaming

18 | or other technology."  Dkt. 1-6 at 11 (Compl., Exh. 6).  Thus, unlike for other

19 | gatherings such as concerts or theater performances, individuals can leave their homes

20 | to organize the technology needed to stream a religious service from a place of

21 | worship.

22 |      Plaintiffs argue that the COSB Public Health Orders are not laws of general

23 | application because they are underinclusive based on exemptions for designated

24 | critical infrastructure sectors.  The COSB is not violating Plaintiffs' constitutional

25 | rights by abiding by the State's designations of these critical infrastructure sectors.

26 | Plaintiffs posit that because "medical cannabis dispensaries and other medical

27 | providers, courts, public utilities, daycare and childcare, and 'necessary' shopping

28 | may remain open as critical infrastructure sectors, they too also must be allowed to

Case No. 5:20-cv-00755

1  meet for in-person religious services.  Compl. ¶ 96.  But these are services that are
2  necessary for public health and for people to stay alive.  And the employees and
3  patrons of these services are not deliberately gathering in groups but engaged in
4  essential activities with limited social interactions.  Furthermore, activities like
5  shopping are singular transitory experiences whereas gatherings are by design a
6  lasting experience in which individuals deliberately come together at the same time,
7  in the same place, and to be near each other for extended periods.

8        In short, while Plaintiffs may hold a heartfelt belief that their in-person
9  religious gatherings are just as essential to them as food, the comparison to shopping
10  for critical items or obtaining medical services is misplaced.  Many gatherings may
11  feel essential to people's well-being, such as schools, yoga classes, and group
12  meditation sessions, but these gatherings, as with Plaintiffs' in-person religious
13  services, must temporarily be restricted for the good of the community as a whole.
14  The government cannot weigh in on which gatherings are most valued, but instead
15  has issued a neutral and general law restricting all in-person gatherings.  In short,
16  comparable secular and religious gatherings have been similarly restricted as the State
17  and the COSB fight to contain the spread of COVID-19 and the Public Health Orders
18  are valid laws of neutral and general application that pass constitutional muster.  See
19  *Stormans*, 794 F.3d at 1079, 1082.

20             (b)    The Public Health Orders Also Meet With the Strict
21                    Scrutiny Standard of Review.

22        Even if the COSB Public Health Orders were subject to strict scrutiny,
23  Plaintiffs have still failed to state their claims for Free Exercise violations.  Laws that
24  are not neutral or not generally applicable mandate a strict scrutiny application and
25  must be justified by a compelling government interest and narrowly tailored to
26  advance that interest.  *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520,
27  531–32 (1993).  The Public Health Orders at issue here represent one of those rare
28  instances where a law survives strict scrutiny review.

Case 5:20-cv-00755-JGB-KK   Document 68   Filed 05/27/20   Page 20 of 27   Page ID #:1318

1    First, it is undisputed that the interest of the COSB in issuing and implementing
2  the Public Health Orders is compelling as it is directed at battling a highly contagious
3  and deadly virus circulating throughout the County, State, and the world at large.  The
4  scientific evidence and data show that given the absence of a vaccine or a cure,
5  currently the most effective method for battling this disease is through limiting social
6  gatherings and practicing social distancing.  Thus, even if strict scrutiny were to apply
7  here (which it does not) the COSB Public Health Orders would pass muster.

8    Moreover, religious services are not specifically targeted nor is it the only
9  activity subject to restrictions.  Far from it, as all in-person gatherings are limited in
10  order to stem the spread of the virus and Plaintiffs' reliance on *Lukumi* is unavailing.
11  In *Lukumi*, the Supreme Court found that although the ordinances at issue banning
12  animal sacrifice were facially neutral, the ordinances did not act in a neutral or
13  generally applicable manner as the conduct of the church members' religious conduct
14  was "almost the only conduct subject to" the ordinances.  *Id.* at 535.  By contrast, the
15  Public Health Orders at issue here apply to a wide swath of activity as all in-person
16  gatherings, secular and religious, are restricted.  Plaintiffs futilely argue otherwise,
17  claiming the Public Health Orders are not of general applicability and not narrowly
18  tailored because of the exemptions for designated critical infrastructure sectors.  But
19  as discussed above, the exemptions are not for similarly situated secular gatherings.

20    Finally, Plaintiffs' suggested alternative of allowing in-person religious
21  services with social distancing measures does not demonstrate any lack of narrow
22  tailoring with regard to the former or current restrictions on all in-person gatherings.
23  "The requirement of narrow tailoring is satisfied so long as the regulation promotes a
24  substantial governmental interest that would be achieved less effectively absent the
25  regulation, and the means chosen are not substantially broader than necessary to
26  achieve that interest."  *Ward v. Rock Against Racism*, 491 U.S. 781, 782–83 (1989)
27  (addressing narrow tailoring in free speech context).  Here, Plaintiffs could not
28  properly allege that their proposed alternative would achieve the goals of the Public

1   Health Orders as effectively, because their alternative would allow for arbitrarily large

2   groups to be in an enclosed space together for long periods of time—an ideal scenario

3   for the spread of a highly infectious disease.   And Plaintiffs' suggestion that

4   projections about the death toll were decreased should justify easing of the restrictions

5   makes little sense; the projections were decreased *because* of the social distancing

6   efforts that Plaintiffs are challenging.[2]   Simply ending the measures as soon as they

7   have started to reduce the spread of COVID-19 "is like throwing away your umbrella

8   in a rainstorm because you are not getting wet."   *Shelby Cnty., Ala. v. Holder*, 570

9   U.S. 570 U.S. 529, 590 (2013) (Ginsburg, J., dissenting).   Further, those restrictions

10  that were in place were no broader than necessary—they permitted Plaintiffs'

11  religious activities that can be conducted via drive-in services or live-streaming, and

12  only prohibited in-person gatherings.   The current restrictions allow for limited in-

13  person services in a manner that reduces the risk of super-spreader events.

14  Accordingly, even under the strict scrutiny test, the disputed Public Health Orders

15  pass constitutional muster.

16              **2.   Establishment Claims**

17          Plaintiffs' allegations in support of their claim for violation of the

18  Establishment Clause also fail to state a claim.   The Establishment Clause, applicable

19  to states via the Fourteenth Amendment, prohibits government from making a law

20  "respecting an establishment of religion."   U.S. Const. Amend. I; *Everson v. Board of*

21  *Education*, 330 U.S. 1 (1947).   In *Lemon v. Kurtzman*, 403 U.S. 602 (1971), the

22

23  ---------------
    [2]   See Compl. at fn. 3, citing April 9, 2020 news article located at

24  https://www.usatoday.com/story/news/investigations/2020/04/09/coronavirus-
    deaths-us-could-closer-60-k-new-model-shows/5122467002/.   The first line of the

25  article notes "Senior White House adviser Anthony Fauci said Thursday the death

26  toll from the coronavirus could be closer to 60,000 Americans, *assuming full*
    *social distancing*, rather than the previously projected 100,000 to 240,000

27  deaths." (Emphasis added).   Moreover, the current death toll at the date of this
    filing is just shy of 100,000.

28

1  Supreme Court held that to survive an Establishment Clause challenge, government
2  conduct must (1) have a secular purpose, (2) not have as its principal or primary effect
3  advancing or inhibiting religion and (3) not foster an excessive government
4  entanglement with religion. *Id.* at 612–13; see also *Am. Family Ass'n, Inc.*, 277 F.3d
5  at 1123 (analysis for Federal Establishment Clause is incorporated into California's
6  no preference clause).

7        Here, there could be no question that the Public Health Orders have a secular
8  purpose—protecting the health and safety of the citizenry.  And the effect of the
9  Public Health Orders matches its purpose: the principal and primary effect of the
10 orders is to prevent public gatherings that contribute to the spread of COVID-19.  As
11 explained above, the effect of the Public Health Orders neither advances or inhibits
12 religion; rather the effect is neutral with respect to religious versus secular activity.
13 The Public Health Orders bar secular gatherings such as concerts, sporting events,
14 and nightclubs in the same manner that they bar religious gatherings.  Finally, the
15 Public Health Orders do not foster any entanglement between government and
16 religion.  Plaintiffs do not allege any facts, nor could they, showing that the COSB's
17 Public Health Orders or their implementation have led to *any* form of entanglement
18 between the government and religion, let alone excessive entanglement.

19             **3.    Free Assembly and Free Speech Claims**

20        Plaintiffs also assert claims for violation of the Federal and California
21 Constitutional rights of freedom of assembly and freedom of speech.  The Freedom
22 of Assembly and Free Speech Clauses apply to the states through the Fourteenth
23 Amendment.  U.S. Const. Amend. I; *De Jonge v. Oregon*, 299 U.S. 353 (1937)
24 (Freedom of Assembly); *Stromberg v. California*, 283 U.S. 359 (1931) (Free Speech).
25 Regulations are permissible under the Freedom of Assembly Clause if they "serve
26 compelling state interests, unrelated to the suppression of ideas, that cannot be
27 achieved through means significantly less restrictive of associational freedoms."
28 *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984).  Similarly, regulations may restrict

15                                    Case No. 5:20-cv-00755

1  speech where they are "content neutral, [are] narrowly tailored to serve a significant

2  governmental interest, and le[ave] open ample alternative means of communication."

3  *Menotti v. City of Seattle*, 409 F.3d 1113, 1128 (9th Cir. 2005).

4       For the same reasons explained above, the Public Health Orders serve the

5  compelling governmental interest of protecting the health and safety of its citizens.

6  Likewise, they are narrowly tailored to serve the significant interest of protecting

7  public health.  *See, e.g.*, *Ward*, 491 U.S. at 782–83 ("The requirement of narrow

8  tailoring is satisfied so long as the regulation promotes a substantial governmental

9  interest that would be achieved less effectively absent the regulation, and the means

10  chosen are not substantially broader than necessary to achieve that interest.")

11       Moreover, the Public Health Orders are not related to the suppression of ideas

12  at all.  In fact, the Public Health Orders permit Plaintiffs' expressive activity through

13  drive-in services, live-streaming services, or otherwise so long as it does not involve

14  in-person gatherings where COVID-19 could spread.  Similarly, the Public Health

15  Orders are content neutral, as explained more fully above.

16       Finally, the Public Health Orders do not prohibit substantially more expressive

17  association than is necessary for the same reason—the Orders permit any expressive

18  activity other than in-person gatherings that come with a high risk of virus

19  transmission.  Thus, the Public Health Orders also leave open ample means of

20  alternative communication.

21            **4.    Due Process Claims**

22       The Fourteenth Amendment's Due Process Clause contains both a procedural

23  and substantive component.  *Washington v. Glucksberg*, 521 U.S. 702, 720–21

24  (1997).  "Procedural due process imposes constraints on governmental decisions

25  which deprive individuals of 'liberty' or 'property interests within the meaning of the

26  Due Process clause."  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  Substantive

27  due process, on the other hand, "forbids the government from depriving a person of

28  life, liberty, or property in such a way that . . . interferes with rights implicit in the

1  concept of ordered liberty." *Engquist v. Oregon Dept. of Agric.*, 478 F.3d 985, 996
2  (9th Cir 2007).

3      Plaintiffs' procedural due process claim against the COSB Public Health
4  Orders is based on the allegation that it is impermissibly vague because it is unclear
5  how the Public Health Orders are to be enforced. Compl. ¶ 134(b). But in a vagueness
6  challenge, "the principal inquiry is whether the law affords fair warning of what is
7  proscribed." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S.
8  489, 503 (1982). Here, the challenged COSB Public Health Orders do just that: they
9  proscribed Plaintiffs' in-person gatherings, but permit religious services to be held via
10 livestreaming or drive-in services.

11     Plaintiffs' substantive due process claim is also flawed. As explained above,
12 the Public Health Orders did not deprive Plaintiffs of any of their fundamental rights.
13 Where laws do not infringe upon fundamental rights, judicial review is limited to
14 "whether the government could have had a legitimate reason for acting as it did."
15 *Sagana v. Tenorio*, 384 F.3d 731, 743 (9th Cir. 2004) (emphasis omitted). The COSB
16 Defendants certainly had a legitimate reason for enacting the Public Health Orders:
17 to protect the health and safety of its residents in the face of a highly contagious virus
18 that can be spread by asymptomatic carriers. Accordingly, Plaintiffs' complaint fails
19 to state a claim for a violation of their substantive due process rights.

20             **5.    Equal Protection Claim**

21     Plaintiffs allege a violation of the right to Equal Protection under the Fourteenth
22 Amendment. "Where the challenged governmental policy is 'facially neutral,' proof
23 of its disproportionate impact on an identifiable group can satisfy the intent
24 requirement only if it tends to show that some invidious or discriminatory purpose
25 underlies the policy." *Lee*, 250 F.3d at 686. Here, Plaintiffs have not alleged, and
26 could not allege, that the Public Health Orders served some invidious or
27 discriminatory purpose. Because the Public Health Orders are facially neutral, as
28 explained above, and because there is no allegation of discriminatory purpose,

1    Plaintiffs cannot state an Equal Protection claim.

2                **6.    California Constitutional Right to Liberty**

3        Plaintiffs further allege a violation of their right to Liberty under the California

4    Constitution.  *See* Cal. Const. Art. I, sec. I.  Plaintiffs generally argue that *Jew Ho v.*

5    *Williamson*, 103 F. 10 (C.C.N.D. Cal. 1900), supports their proposition because the

6    court there found it was "purely arbitrary, unreasonable, unwarranted, wrongful, and

7    oppressive" to seal off a section of San Francisco to prevent the spread of the bubonic

8    plague.  Compl. ¶ 160.  But *Jew Ho* is completely inapposite here.  In *Jew Ho*, the

9    quarantine was arbitrary and racially-motivated, applying only to parts of Chinatown.

10   *Jew Ho*, 103 F. at 23.  And in fact, the court in *Jew Ho* found that the orders were

11   arbitrary precisely because of the differences between that quarantine and the Public

12   Health Orders at issue here.  Specifically, the *Jew Ho* court explained quarantines

13   were only effective when people were restricted to their houses, rather than blocking

14   off an area or territory, because "intercommunication of the people within that

15   territory will rather tend to spread the disease than to restrict it."  *Id.* at 22.  Here, in

16   contrast to the general quarantine in *Jew Ho*, the Public Health Orders are aimed at

17   keeping people in their homes in order to arrest the spread of COVID-19, not aimed

18   at cordoning off sections of society based on arbitrary and racially-motivated reasons.

19   **V.    CONCLUSION**

20       The Supreme Court has recognized for more than a century that governments

21   are afforded substantial deference in protecting citizens during public health crises.

22   Because the Public Health Orders at issue meet with this deferential standard of

23   review, Plaintiffs have failed to state a claim upon which relief could be granted and

24   their Complaint should be dismissed in its entirety as to the County Defendants.

25

26

27

28

COSB-SER-69

1  DATED:  May 27, 2020               MEYERS, NAVE, RIBACK, SILVER &
                                      WILSON
2

3

4                                     By:   /s/ Deborah J. Fox

5                                           DEBORAH J. FOX
                                            MARGARET W. ROSEQUIST
6                                           MATTHEW B. NAZARETH
7                                           Attorneys for Defendants
                                            DR. ERIN GUSTAFSON, SHERIFF
8                                           JOHN MCMAHON, SUPERVISOR
9                                           ROBERT A. LOVINGOOD,
                                            SUPERVISOR JANICE RUTHERFORD,
10                                          SUPERVISOR DAWN ROWE,
11                                          SUPERVISOR CURT HAGMAN, AND
                                            SUPERVISOR JOSIE GONZALES
12

13    3522503.1

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COSB-SER-70

## CERTIFICATE OF SERVICE

1

2       I hereby certify that on this 27th day of May, 2020, I electronically filed the

3   foregoing **SAN BERNARDINO COUNTY DEFENDANTS' NOTICE OF**

4   **MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND**

5   **AUTHORITIES** with the Clerk of the Court using the CM/ECF system.

6       I certify that all participants in the case are registered CM/ECF users and that

7   service will be accomplished by the CM/ECF system.

8

9

10                              /s/ Kathy Glass
                              Kathy Glass
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 5:20-cv-00755
SAN BERNARDINO COUNTY DEFENDANTS' MOTION TO DISMISS

COSB-SER-71

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2021, I filed the foregoing County of San Bernardino Defendants-Appellees' Supplemental Excerpts of Record with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated:  January 7, 2021

/s/ Kathryn Glass
Kathryn Glass

3661771.1